CHARLES S. MCVEIGH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 221. Promulgated August 22, 1944.

*William E. Matthews, Esq.,* and *Allen T. Klots, Esq.,* for the petitioner.

*William F. Evans, Esq.,* for the respondent.

OPINION.

DISNEY, *Judge*: The first question for consideration here is whether the petitioner is taxable upon the amount of $24,422.13 in 1938 and $20,907.13 in 1939, as income received as life beneficiary under the

Senff trust. The above amounts equal the excess of maintaining Knollwood over the income received therefrom (after deduction of depreciation, hereafter discussed). The parties do not disagree that the amounts were received by the petitioner. The difference between them is that the petitioner contends that the above amounts were received by him from trust corpus, under the will of Gustavia A. Senff, and are therefore nontaxable; whereas the respondent's view is the amounts were income distributable by the estate and therefore taxable to the petitioner.

The petitioner contends that we are bound by the decree of September 26, 1941, as a decision of a state court settling his rights under the trust, in the manner for which he here contends. He cites *Freuler* v. *Helvering*, 291 U. S. 35, and other cases. Respondent concedes that if the proceeding was "a bona fide action, on its merits, adjudicating a property right under state law by a state court of competent jurisdiction," it is binding upon this Court, but suggests "collusion" in obtaining the decree.

In the *Freuler* case notice was given to all interested parties, objections were filed to the trustees' accounts, and the decree was entered after a hearing at which all parties were represented by counsel. The decision has been construed to mean that the Court would not hold a decree to be binding if it was "collusive in the sense that all of the parties joined in the submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." *Francis Doll*, 2 T. C. 276. In *Walter A. Frederich*, 2 T. C. 936, we declined to adopt as binding upon us the ruling of a state court on the status of a partnership involved in the estate of a decedent where all parties were in agreement that a partnership existed. In *First-Mechanics National Bank of Trenton* v. *Commissioner*, 117 Fed. (2d) 127, the parties in interest agreed to the payment of a claim against the estate and the court declined to accept the state court's approval of the executor's accounts as binding upon it for estate tax deduction purposes upon the ground that the state court had never adjudicated the claim on its merits.

We need not restate the circumstances surrounding the vacating of the first decree and the entry of the second one, as they are set forth in detail in our findings of fact. They clearly disclose no disagreement among the interested parties on the proposal of the petitioner herein to have the court reopen the accounting proceeding and issue a new decree in the form presented to the court, restating the accounts in accordance with their interpretation of the will, in order to assist petitioner in adjusting his Federal income tax liability. There was no hearing on the merits, and it was plainly never intended that there would be. No issue was presented in an adversary proceeding and no

such proceeding was decided by the court. All interested parties filed their consents on the back of the "Order, Stipulation and Exhibit" (the order being the order vacating the old decree and the exhibit being the form of new decree) except the special guardian for minor remaindermen, and he endorsed thereon a statement that he had no objections.

The petitioner argues that, despite the manner in which the matter was presented to the court, under state law the surrogate was required to disregard the stipulation and construe the will so as to carry out the intent of the testatrix in order to protect the interests of minor remaindermen. *Matter of Spitz*, 129 N. Y. Mis. 78; 220 N. Y. S. 816; *Honadle* v. *Stafford*, 265 N Y. 354; 193 N. E. 172. We do not think such a rule is decisive under the circumstances prevailing here, for the minor remaindermen were not affected by the new decree.

The *Freuler* case, as pointed out above, requires that there be a real controversy before the state court and a decision after hearing fully presenting the facts and issues. There was no such presentation of the case or proceedings here. Neither was the new decree argued in any form before the surrogate or specific reasons set forth in any of the documents submitted to the court for a new decree, only conclusions being stated in the stipulation. No petition for new decree was filed, the only filing in this respect after the original decree being that of the stipulation and the forms of consent and no objection, the order vacating, and the new decree. Neither does the decree, drafted by counsel for the petitioner and the trustees, assign specific reasons for a new decree restating the account and otherwise containing new determinations. The decree sets forth only conclusions, and it does not appear from all of the circumstances that they were arrived at after deliberation, such as was the situation in *Blair* v. *Commissioner*, 300 U. S. 5. In the vacating order the surrogate, as basis for decree, recites that "upon reading and filing the stipulation * * * to which stipulation * * * special guardian for the infant respondents * * * and the attorneys for * * * trustees—have no objection—it is hereby ordered * * * that the decree dated herein the 25th day of July 1941 * * * be * * * vacated." Thus it appears affirmatively that the new decree was based upon stipulation and consent of parties and "no objection" by the special guardian for minors. No recitation of consideration upon the merits appears. It is our opinion that the court never intended its order to be more than an agreed or consent decree.

The petitioner contends that the matter was not one of consent, for the trustees and special guardian did not "consent" but merely voted "no objection" to the vacation of the former decree and entry of another. The evidence is otherwise, as to the trustees, for consent of the trustees, and their motion for the new decree, appear. If, with

reference to the special guardian, there were here any difference between "consent" and "no objection" it is one of those trifles of which the law will take no note. Signifying "no objection" is nothing less than waiver.

In *Otto C. Botz*, 45 B. T. A. 970, the situation involved answers filed which prayed for judgment for the defendants. Yet the answers admitted the allegations of the petition and the liability, and we said "The judgments were clearly entered by the consent of the Botz Co."

Mere lack of contest between parties properly in court of course does not spell collusion, for a judgment by default may be wholly binding. *Jennie Arrott Adams*, 44 B. T. A. 408, cited by the petitioner, which did not involve collusion or consent. But a judgment by mere default in substance as there involved is not reasonably comparable with one by consent, agreement, or waiver. We have no doubt that the reason the guardian was willing thus to enter no objection was that all parties considered the matter to entail nothing prejudicial to anyone—except the tax collector; for in either event, whether under old decree or new, the petitioner received the same amount; and the remaindermen had the same amount left, for in either case the same amount would be subtracted from trust corpus. Thus all parties stipulating, consenting, or not objecting were, so far as their rights in the trust were concerned, indifferent to the form of decree. The stipulation discloses the reason: "because of certain income tax questions which have arisen affecting the life beneficiary, Charles Senff McVeigh, he desires that the account of the Trustees shall be restated, to which restatement the Trustees do not object." A decree entered in such a situation is not of the character which should be binding upon us in the matter of the taxes here involved. The stipulation in fact recites that under the will Knollwood excess expense is *not* chargeable against income; yet a decree directly to the contrary is obtained from the surrogate merely because "it is believed" that an amount equal thereto is payable to petitioner from principal—which the will never provided, and because no issue was made, since it made no difference to the parties. That the prime, if not the only, object of the vacation of the old decree and the substitution of the new was to affect petitioner's taxes is altogether clear. We have more than once indicated that such intent is material. *Estate of Frederick R. Shepherd*, 39 B. T. A. 38; *Hugh D. Rhodes et al., Administrators*, 41 B. T. A. 62 (73); *Jennie Arrott Adams, supra*, (416). We hold that the decree of the Surrogate's Court was obtained through collusion in the sense used in the *Freuler* case and *Francis Doll, supra*, and is not controlling here.

In contending that he received the equivalent of the excess of Knollwood expenses over Knollwood income as nontaxable distribu-

tions from trust corpus, the petitioner argues that Knollwood expenses were chargeable against gross income of the trust and not against trust corpus; that under section 121 of the Revenue Act of 1942 (made retroactive to the taxable years here involved), Knollwood was property held for the production of income and that therefore the trustees were under that section entitled to deduction of any cost of maintaining Knollwood; that a trust is in the same position as an individual, therefore, the trustees under section 121 were fully entitled to deduct any expense of maintaining the Knollwood property, provided only that it is held for production of income. Therefore, he says, in effect, that what he received was not from income, for the income had been used to pay deductible expenses, so what he received was trust corpus. In our opinion Knollwood was held for the production or collection of income within the language of section 121, and of section 29.23 (a)–15 (2) of Regulations 111, based thereon. That regulation provides for the deduction of expense of maintenance of property held for investment or devoted to rental purposes even though it is not currently productive and there is no likelihood that the property will be sold at a profit or otherwise be productive of income. The income for the production of which the property is held includes, under the regulations, "gains from the disposition of property." This property, held ready for rent or sale, therefore, is found to be held for production or collection of income. Nevertheless, in our opinion it does not follow that section 121 may be applied in the circumstances here present. The trust is not before us, nor any question as to deductions to which it is entitled. The testatrix, although she provided in article 15 of the will that after deduction of all proper charges the net income of the estate should be paid to the petitioner, also set up in article 20, in substance, that if the petitioner requested the trustees to sell Knollwood they should, pending such sale, maintain Knollwood in a manner conducive to sale and that thereafter taxes, insurance, and maintenance charges should, to the extent of any excess thereof over rents and profits derived from Knollwood, "be paid by my trustees out of the principal of the trust estate and shall not be a charge against the income thereof." The petitioner so requested the trustees to sell Knollwood, and after a sale thereof, on terms, and a reconveyance thereof because of default in payment, the petitioner again in 1934 reiterated his request to sell, and ineffectual attempts were made to sell the property. In our opinion the property was therefore in the taxable years here involved being held for sale pursuant to petitioner's request, and the excess of the expense of maintaining Knollwood over the receipts from Knollwood was by the direction of the testatrix to be paid from trust corpus and not from gross trust income, as contended by the petitioner.

Section 121 of the Revenue Act of 1942 does not apply, in our view, where as here we do not have the trust before us and where the trustor made particular provision for charge of Knollwood excess expense to corpus. In the instant case, involving the beneficiary, we are to be guided by the terms of the trust instrument. *Jack M. Franks*, 32 B. T. A. 260 (264); *Albert W. Russel*, 35 B. T. A. 602 (606); *Ardenghi* v. *Commissioner*, 100 Fed. (2d) 406; *Caldwell* v. *United States*, 102 Fed. (2d) 607; *John Frederick Lewis, Jr.*, 1 T. C. 449; affd., 141 Fed. (2d) 221.

The respondent, on his part, partly in order to demonstrate that Knollwood was not held for production of income and partly to show that the expense of maintaining Knollwood is not deductible from gross income of the estate, argues at length that after the sale and reconveyance of Knollwood to the trustees the property was held by them not as property held in any ordinary manner, but in a "salvage operation" within the purview of the so-called Otis-Chapal rule laid down in *In re Chapal's Will*, 269 N. Y. 464, and *In re Otis' Will*, 276 N. W. 101. We do not agree; for the opinion in *In re Chapal's Will*, referring to the rule of apportionment there laid down, plainly says: "Of course that method may not be used when a will or a trust indenture prescribes a valid contrary course." (Which bears out our view, above, that section 121 may not make general trust expense deductible from income out of what the trustor provided should be payable from corpus.) Here the testatrix did so prescribe a valid contrary course. That is, she prescribed particularly that by making a request the petitioner, the life beneficiary, could cause Knollwood income to be applied against Knollwood expense and the excess be charged to trust corpus. We think it is immaterial whether we regard the disposition of the property to Chadbourne or to his company and its reconveyance as a completed sale or otherwise, for it would border the absurd to say that the testatrix intended the petitioner's power as beneficiary to request sale to be exhausted by a single sale which proved abortive. After the unsuccessful experience with Chadbourne or his company, petitioner again requested sale. We think a second request was unnecessary. It is clear, we think, that in the taxable year the requests were in effect and that they put into effect the twentieth article of the will. We hold the Otis-Chapal rule to be inapplicable here.

Nevertheless, we think that the excess of Knollwood expense over Knollwood income was chargeable to trust corpus, under the twentieth article of the will. We consider erroneous the petitioner's view of the effect of such article. The petitioner, seeking to show the amounts received by him from the trustees to be nontaxable trust corpus, has the burden of showing that article twentieth of the will authorizes payment to him of trust corpus. We think he does not so demonstrate

and that such was not the intent of the testatrix. The language of the will does not say that the petitioner shall be paid anything out of principal of the trust estate. Instead, it provides that the amounts paid from trust principal should be the excess of Knollwood's expenses. The petitioner seeks to give effect to article fifteenth, making him life beneficiary of trust income after deduction of expense (which in nowise provides for him any trust corpus), yet seeks also effect from article twentieth to free the above stated amounts from taxation, as being trust corpus. The error in such theory is that when, by requesting sale of Knollwood, he invoked article twentieth, he made ineffective article fifteenth as to deduction of "all proper charges" as to Knollwood before distribution of trust income to him, for the simple reason that in that respect article twentieth, a special provision, contradicts article fifteenth by providing instead, as to Knollwood, that *its* expenses, above receipts, should be not deducted from "rents, issues and profits" as article fifteenth says but "shall be paid * * * out of the principal of the trust estate and shall not be a charge against the income thereof."

The intent, in our opinion, is plain. After the request for sale— "thereafter," article twentieth says, referring to the request for sale— Knollwood excess expenses, instead of being "proper charges" against gross trust income as section 15 in general provides, shall "*not* be a charge against the income thereof"—i. e., of the trust estate [italics supplied]. Yet the petitioner attempts to deduct the Knollwood excess expense from other trust income, and to receive an amount equal thereto out of trust corpus, nontaxable. The petitioner's argument simply amounts to a contention that article fifteenth is still effective, and that all "proper charges," meaning all expenses including those against Knollwood, are to be paid from the "rents, issues and profits of said trust estate," leaving him taxable only on the net, though in fact he has received more because the trustees have paid him an amount equal to the Knollwood deficit, on the theory of paying him principal to that extent. For example, if non-Knollwood income was $100,000, Knollwood income $5,000, making total trust income of $105,000, while non-Knollwood expense is $30,000 and Knollwood expense $20,000 (making a Knollwood excess expense of $15,000) thus resulting in a total trust expense of $50,000 and a net income of $55,000, the petitioner would wish to be taxed only on the $55,000, but to receive also, from corpus and nontaxable, the $15,000 equaling the Knollwood excess expense, a total receipt of $70,000. But $70,000 is the net non-Knollwood income ($100,000 less $30,000 expense) so we see that in fact the amount of non-Knollwood net income is received, but petitioner would wish $15,000 of it considered from trust corpus and so not taxable. In our view this is error. Article twentieth simply segregates Knollwood, its income and its expenses, from other

trust income, after the request for sale. The only resort Knollwood has (in a year when its expense exceeds its income) for payment of excess expense is, not to gross trust income, but to trust principal. Since article twentieth requires such excess expense to be paid from trust principal, even if during the course of a year general trust income was used to pay Knollwood expense, reimbursement of the petitioner as beneficiary at the end of the year, when excess Knollwood expense is ascertained, would not justify calling the payment one from trust corpus. In such case the trustees would merely be paying him income temporarily diverted from its proper destination, the petitioner. He was, after the request for sale, entitled to non-Knollwood net income with no connection with Knollwood, its receipts, expenses or its right to call upon trust principal for excess expense.

This in our view was the intent of the executrix, and what she provided in her will. The expensive Knollwood property might prove a burden to the life beneficiary. If so, it was to stand on its own bottom, so to speak, without resort to the general trust income, which was otherwise under article fifteenth to go to petitioner, and with resort for excess expense only to trust principal. Thus the net income of the trust was not reduced by payment of excess expense of taxes and maintenance of Knollwood. Such items reduced corpus only and petitioner was entitled to all non-Knollwood net income, but only as income, not as trust principal. We hold that the amounts of $24,422.13 and $20,907.13, above stated, were under the terms of the will not trust corpus and are not deductible from any trust income received by petitioner from the Senff trust.

We next consider the question of deduction of depreciation on Knollwood. Petitioner, as life beneficiary of the income of the trust, was allowed deductions for depreciation during the taxable years on the portions of Knollwood actually rented and was denied deductions for the remaining exhaustible property, including the residence. We are concerned only with the right of petitioner to additional deductions for exhaustion on the buildings and equipment not under lease. The amount of such additional depreciation each year, if allowable, has been stipulated.

The Revenue Act of 1938, as amended by section 121 of the Revenue Act of 1942, allows deductions for exhaustion "or property held for the production of income." While the allowances made by respondent for exhaustion appear from his brief to have been allowed upon the theory that deductions were limited to the property actually producing income, he makes no contention here that the statute itself so limits the deduction. The substance of his argument is that the property did not produce income during the taxable years; that the testatrix had no idea that the real property would produce other than deficits, and that in the face of recurring annual deficits in the mainte-

nance of the property it is obvious that it was not being held for the production of income. We have, however, above held, on the facts, that Knollwood was so held for the production of income under the statute.

Section 23 (1) of the Revenue Act of 1938 provides that:

\* \* \* In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

The will of the decedent creating the trust contains no provision for allocation of depreciation on Knollwood between the trustees and petitioner. Petitioner was entitled to all of the income of the trust and, accordingly, is, under the terms of the statute, entitled to deduct all of the allowances for depreciation. *Grey* v. *Commissioner*, 118 Fed. (2d) 153; *Edna C. Gutman*, 1 T. C. 365; affd., 143 Fed. (2d) 206.

In *Mary Laughlin Robinson*, 2 T. C. 305, the petitioner abandoned her residence in September 1931 to occupy one she had inherited. In 1932, she listed her former residence with two real estate firms for rent or for sale, but, notwithstanding diligent efforts, she was never able to rent or sell the property. A garage, which was separate from the residence, was leased to the caretaker of the premises for a small amount, which was reported as income. We held that the petitioner was entitled, as to the entire property, to deductions for maintenance expenses and depreciation. In *Eleanor Saltonstall*, 2 T. C. 1099, a farm was offered for sale, pending which the owner rented part of the property for such amounts as she could obtain. It was held that the farm buildings were subject to deductions for depreciation.

We hold that petitioner is entitled to deductions for depreciation on all of the Knollwood property.

*Decision will be entered under Rule 50.*