OFINION. Tyson, Judge: The master made a distribution in the taxable year of the property involved in the suit in the Circuit Court of Dade County. The property so distributed consisted of (a) the proceeds of the sale of the hotel and residence and the furnishings therein (hereinafter referred to as the real estate) amounting to $256,500; (b) cash of $18,750.59 in the hands of Tatem Wofford and a balance of $4,040.71 in the bank account of the Wofford Hotel Corporation (hereinafter referred to as the cash funds); and (c) small items of cash, inventories, meter deposits, and prepaid taxes and insurance on the hotel and residence (hereinafter referred to as “miscellaneous assets”), amounting to $3,143.06. The Commissioner held the distribution to be a distribution in liquidation of the Wofford Hotel Corporation from which the stockholders realized a gain of $266,867.98 and determined the petitioner’s share of such gain to be $133,300.56, on the basis of his ownership of 999 of the 2,000 shares of outstanding stock. The petitioner, relying upon a decision by the Florida courts that the property belonged to the Woffords as coowners, opposes the treatment of the transaction for tax purposes as a distribution in liquidation of the corporation. He admits that as a coowner he realized a gain in the taxable year from the sale by the master of the real estate, but contends that, as such coowner, he assigned a 499/2000 undivided interest in the real estate to his wife, Patricia Wofford, on December 2, 1937, and that the gain which was realized from the subsequent sale by the master of their undivided one-half interest to the John B. Woffords is taxable one-half to petitioner and one-half to his wife. Petitioner also contends that no part of the cash funds and miscellaneous assets may be included in his income of the taxable year, for the reason that those items constituted either capital or income of the Woffords individually which was received by them prior to the taxable year and was merely divided among them during that year. The petitioner, as we have stated above, rests his contention of ownership by the Woffords in their individual capacity upon the decision of the Circuit Court in the suit brought by John B. Wofford and his wife against the petitioner and his wife and the Wofford Hotel Corporation, and the affirmance of that decision by the Supreme Court of Florida. He urges that, in that suit, the title to the property was adjudicated as between the Wofford Hotel Corporation and the Wof-fords individually; that the Woffords were adjudged to be the co-owners at the date when the suit was filed (November 4, 1936) ; and that the decisions of the Florida courts settling the ownership are conclusive and must be followed by this Court, as required by Freuler v. Helvering, 291 U. S. 35; Blair v. Commissioner, 300 U. S. 5; Helvering v. Rhodes’ Estate, 117 Fed. (2d) 509, affirming 41 B. T. A. 02; Estate of Frederick R. Shepherd, 39 B. T. A. 38. Those cases hold that a Federal court must give conclusive effect to the decision of a state court settling property rights; but the rule applies only to a decision entered in a proceeding presenting a real controversy for determination. The decision must settle issues regularly submitted and not be in any sense a consent decree. Francis Doll, 2 T. C. 276; affd., 149 Fed. (2d) 239; certiorari denied, Oct. 8, 1945; Freuler v. Helvering, supra. See also Charles S. McVeigh, 3 T. C. 1246, and First-Mechanics National Bank v. Commissioner, 117 Fed. (2d) 127, affirming 40 B. T. A. 876. In the suit in the Circuit Court it was shown that the legal title to the property here in question was held by the Wofford Hotel Corporation, and the plaintiffs therein sought to hold the corporation as trustee of such property for all of the Woffords as beneficial owners, and to have the court terminate the trust and direct sale of the property and a distribution among the individual parties to the suit. The Circuit Court decreed that the corporation held the legal title only as a trustee and that the Woffords were the beneficial owners of the property, and it determined their proportionate interests therein and ordered a sale and distribution. The Supreme Court of Florida affirmed this decree. Wofford v. Wofford, 176 So. 499. An examination of the proceedings in the state courts reveals that there was no dispute over the ownership of the property as between the corporation and the individual parties. The master’s report states that Tatem Wofford, in his answer, denied the allegations of the complaint respecting the hotel property “except the joint ownership,” and that he asserted ownership of the residence to be in the corporation. The petitioner has not placed the answer in evidence so that we may determine for ourselves precisely what matters were admitted by the pleadings, but the opinion of the Supreme Court of Florida (Wofford v. Wofford, supra) states in unmistakable language that there was no real controversy respecting the ownership of the property as between the corporation and the Woffords. In stating the facts the Supreme Court said that “the parties admit the joint ownership of tire property involved in the suit,” and throughout its opinion it refers to the admission by all parties that the Woffords were the joint and beneficial owners of all of the property. Furthermore, it appears that both the Circuit Court and the Supreme Court regarded the suit not as a suit to resolve the ownership as between the corporation and the Woffords, but as one for the partition of property admittedly belonging to the latter as beneficial owners. Since it affirmatively appears that ownership in the Woffords was adjudicated in the state courts on the basis of the admission of the parties, there was no real controversy on that question, and the rule of the Freuler case and the other cases cited above does not apply. Upon the facts shown by the record it is clear that the property in question was the property of the Wofford Hotel Corporation and that the interest of the Woffords therein was none other than that which shareholders ordinarily have in the property of their corporation. The hotel property was acquired by that corporation from Ora Wof-ford in exchange for all of its stock, and her purpose in organizing the corporation and transferring the property to it was to enable it to mortgage the property to secure an original issue of $250,000 of bonds. The proceeds of those bonds were used to discharge encumbrances which had been placed on the property by Ora Wofford to finance the construction and equipping of the hotel. Between 1923 and the death of Ora Wofford in 1932, the bonded indebtedness was reduced to $150,-000 from the profits of the hotel business. In 1934, when the bonded indebtedness had been further reduced to $136,000, the bonds were “reissued,” and the residence, which was then owned outright by Tatem and John, was conveyed to the corporation and by it mortgaged as further security for the reissued bonds. The profits of the business were thereafter used to reduce the bonded indebtedness until it was finally discharged in June 1936. In other words, the corporation acquired all the property with full power to mortgage it; and, during the thirteen years preceding the institution of the suit, it held the property subject to the rights of the bondholders and used the income therefrom to discharge its obligation to them. There is nothing in this record to indicate that, at any time prior to the distribution under the decree, the corporation relinquished to the Woffords any of its rights of ownership in any of the property. We think the facts recited in the immediately preceding paragraph alone sufficiently demonstrate complete ownership of the property in the corporation; but there are other facts and circumstances which support such conclusion. Throughout its corporate existence the Wofford Hotel Corporation made returns in its own name and paid corporate taxes. It maintained its own bank accounts, in which it deposited funds derived from operation of the business. Although Tatem and John became involved in a dispute in 1934 over the right to manage the business, they withdrew from corporate funds annual salaries of $7,500 each, by agreement. The corporation apparently incurred all obligations in its own name, as is indicated by the items of accounts payable, insurance, taxes, and meter deposits described in the findings of fact. When Ora Wofford died her executors recognized no property interest of the estate other than the ownership of the stock of the Wofford Hotel Corporation. The stock was inventoried at $25,000, and upon distribution stock certificates were reissued in equal amounts to Tatem and John. The record is devoid of proof that the Wofford brothers and their wives ever treated the hotel and residence properties as their own or that they ever accounted for the profits therefrom in their individual income tax returns. On the contrary, it appears from the master’s statement of the final settlement, in which John was credited for one-half of the Federal income taxes payable by the corporation according to its balance sheet of December 4,1937, that the income of the business for the year 1937 was returned by the corporation. Since we are of the opinion that all of the property distributed by the master belonged to the Wofford Hotel Corporation, and since all of such property was distributed among the stockholders by the master, there was a liquidation in fact, W. E. Guild, 19 B. T. A. 1186; Frelmort Realty Corporation, 29 B. T. A. 181; Ward M. Canady, Inc., 29 B. T. A. 355; affd., 76 Fed. (2d) 278; certiorari denied, 296 U. S. 612; W. F. Kennemer, 35 B. T. A. 415; affd., 96 Fed. (2d) 177; T. T. Word Supply Co., 41 B. T. A. 965, and the Commissioner properly treated the transaction as a distribution in liquidation of the corporation. Our conclusion just above disposes of the contention of petitioner that the cash funds and miscellaneous assets were capital or income of the Woffords received prior to the taxable year (cf. Wells Fargo Bank Union Trust Co. v. Blair, 26 Fed. (2d) 532; Taylor Oil & Gas Co. v. Commissioner, 47 Fed. (2d) 108; certiorari denied, 283 U. S. 818; Mrs. Grant Smith, 26 B. T. A. 1178), and of his further contention that he conveyed by assignment a 499/2000 interest in the real estate to his wife prior to the sale by the master so as to relieve him from tax on the gain from the sale of the portion so assigned. Prior to the assignment of December 2, 1937, the corporation had made a capital distribution to its stockholders of $24,072.17, thereby leaving an un-recovered basis of $927.83 for the 2,000 shares of outstanding stock, and prior to that date, and on November 22, 1937, the master made a distribution of the cash funds of $18,750.59 and $4,040.71, of which the petitioner’s share was 999/2000. It is therefore apparent that at the time when the assignment was made the petitioner had recovered more than the basis of his shares of stock, and that the assignment, assuming it was bona fide, operated to transfer 499/2000 of the remaining assets, all of which represented gain derived by the petitioner from the liquidation. The assignment therefore was an assignment of income to be received by the petitioner in the future, and did not relieve him from liability for tax when such income was realized. Helvering v. Horst, 311 U. S. 112. The issue next to be considered is whether the petitioner is entitled to a deduction for trade or business expenses under section 23 (a) of the Revenue Act of 1936. In the accounting between the petitioner and John B. Wofford of December 20, 1937, it was found that there was outstanding $2,075.65 of accounts payable. The court directed that these accounts be assumed by John, and, with its approval, one-half of the amount thereof, or $1,037.83, was charged to the petitioner and was paid by him to John in the final settlement. The petitioner contends that he is entitled to deduct 1998/2000 of the amount of $1,037.83 under section 23 (a) as an “expense incurred prior to the conveyance of that proportionate part of his interest to his wife on December 2, 1937,” and, he asserts that the accounts represented accounts then payable for expenses incurred in the operation of the Wofford Hotel and residence. In view of our conclusion that the hotel and residence belonged to the Wofford Hotel Corporation, the expenses of operating those properties were its expenses, and, if deductible, they were deductible by it alone. Hal E. Roach, 20 B. T. A. 919; James F. Curtis, 3 T. C. 648, 651. Furthermore, there is nothing in the record to show the purpose for which the obligations were incurred. They may well have been incurred for items of a capital nature. Interstate Transit Lines, 44 B. T. A. 957, at page 961; affd., 130 Fed. (2d) 136; affd., 319 U. S. 590. The petitioner’s claim for the deduction is denied. The next issue is whether the petitioner is entitled to deductions on account of the payment of $256.80 for Federal and state documentary stamps affixed to the deeds of the master conveying the hotel and residence to John B. Wofford and his wife, and the payment of $3,084.81 for one-half of the city, county, and state taxes on those properties for the calendar year 1937. The petitioner rests his claim for the deduction of both items upon the premise that he and his brother John and their respective wives, rather than the Wofford Hotel Corporation, owned the hotel and residence property, and he concedes that, if the Florida courts were wrong in holding that those properties were not owned by the corporation, the respondent is correct in his contention that the stamp taxes and real estate taxes were corporate obligations and not deductible by its shareholders. See Samuel Riker, Jr., 15 B. T. A. 1160; Lone Pine Lawn Corporation, 41 B. T. A. 638; affd., 121 Fed. (2d) 935; Fleming G. Railey, 36 B. T. A. 543. Since the question of ownership of the hotel and residence has been decided adversely to the petitioner under the first issue, we deny his claim for the deductions without further discussion. The next issue is whether the petitioner is entitled to a deduction for attorney fees and other costs incurred in defending the suit in the Circuit Court and the Supreme Court of Florida. The evidence shows that the petitioner expended $9,337.78 for that purpose and that he paid $8,163.67 of that amount during the taxable year. The petitioner claims a deduction of the latter amount under section 23 (a) of the Revenue Act of 1936, and the respondent concedes that the deduction should be allowed to the extent of $7,981.82, which is the amount which the petitioner claimed as a deduction in the petition herein. There is no explanation of the discrepancy between the amount shown by the proof and the amount claimed in the petition. We allow deduction only of the amount of $7,981.82. Ben Greenbaum, 20 B. T. A. 469. The final issue is whether the penalty of 5 percent for negligence should be imposed. The petitioner in his return filed August 1938 set forth all the details showing the value of each item included in the distribution of the property of the Wofford Hotel Corporation. The respondent found no omission of assets and accepted the petitioner’s valuation of each item involved. He differed with the petitioner only as to the proportion of the net profit taxable to the petitioner, holding the petitioner to be the owner of, and taxable with,, the profit on 999 shares of stock instead of 500 shares as reported by the petitioner in his return. The final decree of the Circuit Court of June 28, 1937, provided for the distribution as between Tatem Wofford and his wife and John B. Wofford and his wife of all the assets of the Wofford Hotel Corporation in accordance with their, respective interests therein. The assignment of December 2, 1937, to his wife by Tatem Wofford purported to embrace one-half of all the benefits, rights, and interest which he had in the final decree, and the assignment recited that its purpose was to transfer and set over to his wife such proportionate interest in the final decree as would make their interests in the assets of the Wofford Corporation equal. We think these facts, together with the other facts of record, were sufficient to justify a belief on the part of petitioner that by his assignment he had effectively disposed of a 499/2000 interest in all of the corporate assets; and this is true notwithstanding that we have held in deciding the effect of the assignment that it operated to transfer only the assets of the Hotel Corporation remaining after the distribution of cash funds in the respective amounts of $18,750.59 and $4,040.71. If the petitioner was mistaken, as he evidently was, as to the controversial question of what the legal effect of the assignment for income tax purposes was, that is not a sufficient reason -for holding that he was negligent within the meaning of section 293 (a) of the Revenue Act of 1936. Bennett v. Commissioner, 139 Fed. (2d) 961; and Mans Pederson, 14 B. T. A. 1089. Neither in the notice of deficiency nor in the respondent’s brief do we find any suggestion of the acts which required the imposition of the penalty, and, as we are unable to discover in the record any “understatement of tax attributable to negligence” we disapprove the imposition of the penalty. Wilson Bros. & Co. v. Commissioner, 124 Fed. (2d) 606. Reviewed by the Court. Decision will be entered under Rule 50. VaN FossaN, Jdissents as to the first issue.