THOMAS FLEXIBLE COUPLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12579, 15188, 15753, 17378. Promulgated May 15, 1950.

*Frank A. Moorshead*, *Esq.*, *Richard D. Case*, *Esq.*, and *Richard E. Crook*, *C. P. A.*, for the petitioner.
*Louis A. Boxleitner*, *Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: The first issue in these proceedings for our decision is whether certain "royalty" payments made by petitioner to Bertha E. Thomas are allowable deductions from petitioner's gross income under section 23 (a) (1) (A) of the Internal Revenue Code.[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

In our findings of fact we have summarized the litigation concerning the deduction of similar payments for the years 1939, 1940, and 1941. Respondent contends that the same issue is involved in the present proceedings as was litigated in the prior proceedings; that, a court of competent jurisdiction having passed on this issue, our adherence to the former decisions as *res judicata* is required. If respondent's contention is correct, we shall not reach the merits of the present controversy as to the deductibility as ordinary and necessary business expense of alleged royalties paid.

The most recent pronouncement of the Supreme Court on the problem of *res judicata* is found in *Commissioner* v. *Sunnen*, 333 U. S. 591. As stated therein, each tax year presents a new cause of action, therefore:

> * * * the parties are free to litigate points which were not at issue in the first proceeding * * *. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of the Law of Judgments, §§ 68, 69, 70; Scott, "Collateral Estoppel by Judgment," 56 Harv. L. Rev. 1.
>
> * * * * * * *
>
> * * * It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. * * * As demonstrated by *Blair* v. *Commissioner*, 300 U. S. 5, 9, a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. * * *

Petitioner contends that the decisions of the Pennsylvania state courts described in our findings of fact represent an intervening decision within the meaning of *Blair* v. *Commissioner*, 300 U. S. 5, and *Commissioner* v. *Sunnen, supra*. In this contention we think petitioner must be sustained.

In *Blair* v. *Commissioner, supra*, to which the Supreme Court recently referred with evident approval in its opinion in the *Sunnen* case, the Commissioner ruled that the income distributed in the taxable year 1923 to assignees of interests in a trust was taxable to the assignor petitioner. The Board of Tax Appeals held to the contrary. The Circuit Court of Appeals reversed the Board, holding that the trust was a spendthrift trust and the assignments were invalid. The Supreme Court of the United States denied certiorari. The trustees then brought suit in the courts of Illinois to determine the validity of the assignment. Upon review, an intermediate appellate court of Illinois decided that the trust was not a spendthrift trust, and upheld the assignments. The record of the state court proceedings was then received in evidence by the Board of Tax Appeals in proceedings in-

volving the income of the trust for 1924, 1925, 1926, and 1929. The Board thereupon overruled the Commissioner's determination of petitioner's liability. The Circuit Court again reversed the Board. The Supreme Court granted certiorari, followed the state court decision, reversed the decision of the Circuit Court, and affirmed the decision of the Board. The Government first contended then, as it does in the instant proceedings, that the judgment relating to the income for 1923 was conclusive in the subsequent proceedings as *res judicata*. In disposing of this contention, the Supreme Court held that "the opinion and decree of the state court created a new situation" and could not "justly be ignored."

In the instant case, the judgments of the state courts of Pennsylvania were not before the United States Court of Appeals for the Third Circuit in *Thomas Flexible Coupling Co.* v. *Commissioner, supra,* as a part of the record in that case and they have not been a part of the record before the Tax Court until now. This, we think, creates a "new situation" and can not "justly be ignored," to use the language of the Supreme Court in the *Blair* case.

In *Masterson* v. *Commissioner,* 141 Fed. (2d) 391, the sequence of events was somewhat similar to those in the instant case. The Board of Tax Appeals first held that the taxpayer had a full life estate in the property. Pending the appeal to the United States Circuit Court of Appeals, the taxpayers obtained a contrary decision by the state court and then offered it in evidence in the Circuit Court of Appeals. That court refused to enlarge the record so as to admit the state court judgment in evidence. However, it considered the decision and then declined to follow it. In subsequent proceedings in the Tax Court involving the same parties, taxpayer pleaded and proved the state court judgment. The Tax Court nevertheless held that the Circuit Court's decision was *res judicata* as to such proceedings. The Fifth Circuit reversed and held that its former decision in the case was not *res judicata* as to the proceedings because the state court judgment had not been before it as part of the record proper on the first appeal. In deciding the issue of *res judicata* against the Commissioner in the *Masterson* case, the court said:

> The situation here then is in legal effect the same as it was in Blair's case. There the Federal Court made its first decision without having the State Court judgment before it. It made its second decision on a record in which the State Court proceedings appeared as pleaded and proved. Here, when the first decision was made, the record of the State Court proceedings was not before the court. When the second decision was made, they were. Res adjudicata is a principle of peace, and should be applied to bring litigation to an end where it is correct and just to do so. It is without application here. * * *

The respondent strongly contends that the judgments of the Pennsylvania state courts were in nonadversary proceedings and, therefore,

should be given no weight here in determining the issue of *res judicata*. If, in giving effect to the judgments of the Pennsylvania state courts, we had to be guided and controlled by the dissenting opinion of Justice Jones in *Thomas* v. *Thomas Flexible Coupling Co.*, *supra*, we would, doubtless, sustain respondent's contention that these Pennsylvania judgments were in nonadversary proceedings and we are not bound by them. However, it is to the majority opinion of the Supreme Court of Pennsylvania that we must look for the character of the proceedings and not to the dissenting opinion of Justice Jones, regardless of what we might think as to its merits.

In *Gerrard E. Kelly Trust No. 2* v. *Commissioner*, 168 Fed. (2d) 198, it was held that the Tax Court erred in not following a judgment by an appellate state court on the question of whether each of three trust deeds established but a single trust, even though in that particular case the proceedings in the lower state court were nonadversary, the complaint was amended to include the question only after the proceedings raising that question were begun in the Tax Court, "all the parties to the state-court suit were in accord with one another before the entry of the judgment therein," and the appeal to the higher state court was taken only after the Tax Court had indicated in another case that a lower court judgment might be inconclusive unless there was an appeal. The Second Circuit stated:

> We think the Tax Court erred. Whatever may have been the nature of the state-court suit in its inception, the appeal made it adversary, within the meaning of *Freuler* v. *Helvering*, 291 U. S. 35, and *Blair* v. *Commissioner*, 300 U. S. 5, especially as, on appeal from the state-court judgment, one judge dissented. The fact that the appeal was considered shows that the judgment was not by consent, for a consent judgment by its nature precludes an appeal.

> The doctrine of the Freuler and Blair cases has been criticised. There may be good sense in the criticism, but rejection of the doctrine is not within our province.

In view of the foregoing authorities, we hold against respondent's plea of *res judicata*. We hold that the decision of the Supreme Court of Pennsylvania that Bertha E. Thomas was not legally obligated in 1939 to assign the patents in question to petitioner, that their assignment was legal consideration for petitioner's promise to pay the royalties provided under the contract, and that petitioner was thereby legally obligated to make the payments which were made in the years 1942, 1943, and 1944, is determinative on these points in the present proceedings. But while we fully recognize the power and authority of the Supreme Court of Pennsylvania to determine "who owes what and to whom" under Pennsylvania law and that its decisions as to legal liability of petitioner to pay under the agreements of November 26, 1939, and November 26, 1943, are binding upon us, that is not to say that such decisions are binding upon us as to whether the amounts so paid or any part thereof in pursuance of the legal liability decreed in such decisions are deductible from gross income as ordinary and

necessary business expenses. The Pennsylvania state courts had not the power to decide that a single dollar of such payments was deductible as ordinary and necessary business expense. That is a question of Federal law and is within our jurisdiction in the present proceedings.

As the Supreme Court said in *Blair* v. *Commissioner, supra*, after deciding that the decision of the Illinois court that the testamentary trust there involved was not a spendthrift trust and that the beneficiary's assignment of income was valid: "The question remains whether treating the assignments as valid, the assignor was still taxable upon the income under the federal income tax act. That is a federal question." And in the same way in the instant proceedings, whether the royalties paid by petitioner to Bertha E. Thomas, or any part thereof, are deductible as ordinary and necessary business expense is a Federal question.

We shall now examine that question. Section 23 (a) (1) (A) of the code specifically permits the deduction of rentals or "other payments" required to be made as a condition of the continued use of property. This provision covers patent royalties paid in a proper case. Cf. *Wall Products, Inc.*, 11 T. C. 51; *Heatbath Corporation*, 14 T. C. 332.

Petitioner argues that it is entitled to deduct from its gross income in each of the taxable years the entire amount of royalties which it paid to Bertha E. Thomas as a business expense because the amounts paid were reasonable. Respondent, on the other hand, while arguing strongly that the royalties paid were not legal obligations of petitioner and that the decision of the Third Circuit in *Thomas Flexible Coupling Co.* v. *Commissioner, supra*, affirming our memorandum opinion is *res judicata* as to the present proceedings, contends in the alternative that, if this Court should determine that petitioner was obligated to pay royalties to Bertha E. Thomas during the taxable years 1942, 1943, and 1944, the payments made to her were unreasonable in amount and that to the extent that such payments were unreasonable they are not deductible as ordinary and necessary business expenses under section 23 (a) (1) (A) of the code. In support of this alternative contention respondent argues in his brief as follows:

It is not necessary to look far for support of respondent's contention as to the unreasonableness of royalties claimed. At their meeting of November 11, 1943, petitioner's stockholders in acting on the resolution offered by Ernest Hagenlocher, petitioner's vice-president, specifically recognized that the royalty payments to Bertha E. Thomas had become entirely unreasonable in amount. Then M. T. Thomas, as president of the petitioner, and Bertha E. Thomas entered into the supplemental agreement of November 26, 1943 wherein they recited that the royalties then being paid to her were "in excess of the amount contemplated by the parties when the said agreement [of November 26, 1939] was executed." In this agreement petitioner and Mrs. Thomas recognized that any royalties in excess of $80,000 were unreasonable in amount and placed a ceiling of $80,000 per annum on all future royalty payments.

As we pointed out in the recent case of *Heatbath Corporation, supra:*

Ordinarily the amounts which a corporation must pay under an agreement for the use of a patent would be deductible in their entirety as ordinary and necessary expenses, and neither the Commissioner nor the Court would have any authority to rewrite the agreement of the parties. But where, as here, the parties contracting with the corporation and the wife of one of those parties hold practically all of its stock, and, as a consequence, make the decisions for the corporation, the terms of their agreement may be examined to see whether the amounts to be paid may fairly be regarded as compensation for the use of the patent or represent, to some extent, dividends in disguise. Cf. *L. Schepp Co.,* 25 B. T. A. 419; *Granberg Equipment, Inc., supra; Atlantic Monthly Co.,* 5 T. C. 1025. * * *

We then went on to hold in the *Heatbath Corporation* case, *supra,* that only part of the royalties paid in that case to the taxpayer's principal stockholders, Walenn and Wilbur, was deductible as ordinary and necessary business expense.

Relying upon the *Heatbath Corporation* case, *supra,* and the rule therein stated, and after a careful consideration of the evidence, we have found that $80,000 in each of the years 1942, 1943, and 1944 of the amounts paid to Bertha E. Thomas as royalties was royalties and deductible by petitioner in each of the taxable years as ordinary and necessary business expense under section 23 (a) (1) (A) of the code. The remainder of the amounts paid in 1942 and 1943 in excess of $80,000 must be regarded as in the nature of a distribution of profits.

It is true, of course, as respondent argues in his brief, that under our memorandum opinion in the former proceedings, affirmed in *Thomas Flexible Coupling Co.* v. *Commissioner, supra,* petitioner was not allowed to deduct anything because of similar royalties paid to Bertha E. Thomas in the years 1939, 1940, and 1941, but that was because we held in those proceedings that there was no legal obligation resting upon petitioner to make such payments, that they were mere voluntary payments and, as such, were not deductible as ordinary and necessary business expense. That such was the basis of the Third Circuit's affirmance of our decision is shown, we think, by the following language of the court:

The Tax Court obviously labored under no misapprehension of law in its decision. Under the facts before it and passing upon the credibility of the witnesses it found that there was no consideration for the royalty agreement, that the royalty payments by the company were actually voluntary and that they were not ordinary and necessary business expenses. * * *

The Third Circuit, in affirming our decision in that case, pointed out that the subsequent judgment of the Supreme Court of Pennsylvania to which we have already referred could not hamper the Tax Court's right to determine what were and what were not deductible under the statute as ordinary and necessary expenses. That, of course, was true,

as we have already said, and, inasmuch as the records of the proceedings of the Pennsylvania courts were not before us in the former proceedings, they had no effect in those proceedings in determining legal liability to pay the royalties. Cf. *Masterson* v. *Commissioner, supra.*

In the instant proceedings we do have in evidence the records of the proceedings in the Pennsylvania state courts and, as has already been pointed out, the Pennsylvania courts have held that the payments made by petitioner to Bertha E. Thomas were not voluntary payments made by petitioner without any legal obligation to make them, but, on the contrary, represented obligations which petitioner was legally bound to pay. This, as we have endeavored to point out, presents an entirely different situation from what we had in the former proceedings and imposes upon us the function of deciding under the evidence which we have in the instant proceedings what, if any, of the amounts so paid by petitioner to Bertha E. Thomas in 1942, 1943, and 1944 are deductible as ordinary and necessary business expenses. In discharge of that duty we have determined that $80,000 of such amounts in each of the taxable years is deductible as ordinary and necessary business expense.

Much of respondent's argument is to the effect that the patents in question were of no value to petitioner and that petitioner could have done all of its manufacturing of flexible couplings just as well without the right to use the patents as with them. But there is much testimony in the record from witnesses having far more technical knowledge in such matters than we have, who testified that the right to use such patents and the ideas which they represented had great value to petitioner. There is too much of this testimony for us to discuss it in detail in this opinion. Suffice it to say that our finding that $80,000 represents a reasonable amount to allow petitioner as a deduction in each of the taxable years as ordinary and necessary business expense is based upon a consideration of this testimony, taking also into consideration petitioner's own realization that the royalties, on account of swollen war business, were amounting to far more than the parties had originally contemplated under their contract of November 26, 1939, and should be reduced and were, in fact, reduced as we have detailed in our findings of fact.

Having reached our conclusions as stated above on the issue of *res judicata* and as to how much petitioner is entitled to deduct in each of the taxable years as ordinary and necessary business expense on account of the royalties paid, we have two more issues to consider. The next of these is, What is the proper amount of the deduction for Pennsylvania corporate net income tax which is allowable in computing petitioner's taxable net income for each of the taxable years 1942, 1943, and 1944? The Pennsylvania corporate net income tax is measured by the

net income of a corporation as returned to and ascertained by the Federal Government. Both parties agree that the amounts which petitioner will be entitled to deduct on account of the Pennsylvania corporate net income tax are dependent upon the conclusions reached by this Court on the main issues and can be settled under Rule 50. Therefore, it is unnecessary for us to further discuss that issue.

The last and final issue presented to us is with reference to the determination by the renegotiation authorities of the amount of excessive profits realized by petitioner upon its war contracts. Petitioner's assignments of error as to these renegotiation determinations have been stated in detail in our preliminary statement and need not be repeated here. Respondent in his brief discusses the matters raised by these assignments of error as follows:

The Secretary of the Navy and the War Contracts Price Adjustment Board have made determinations as to the amounts of excessive profits realized by petitioner in the calendar years 1942, 1943 and 1944. Petitioner has petitioned this Court for redetermination of the amounts of excessive profits which have been determined by the above-mentioned renegotiation authorities. These renegotiation proceedings are now pending before this Court under Docket Nos. 256–R, 338–R and 639–R. The adjustments to be made in petitioner's gross income for each of the taxable years here involved so as to eliminate therefrom petitioner's excessive profits during said years, will depend upon the final disposition of the proceedings now pending before this Court under Docket Nos. 256–R, 338–R and 639–R. See section 3806 (a), Internal Revenue Code.

Petitioner, in its briefs, does not argue to the contrary of the foregoing position taken by respondent. Petitioner in its brief states:

There are other issues, as set forth in the pleadings, pertaining to the deduction for the Pennsylvania Corporate Net Income Tax, and deductions for renegotiation in connection with war contracts. However, as the solution of these issues is believed to follow as a consequence from the decision on the main issue and as it appears that they can therefore be disposed of in the computation under Rule 50, the discussion in this Brief will be limited for the sake of simplicity to the basic issue stated above.

Our decision in *National Builders, Inc.*, 12 T. C. 852, with reference to the renegotiation payments is controlling in the instant proceedings. In that case we said:

The correct tax liability of a taxpayer is, in the first instance, to be determined with complete disregard of the fact that the taxpayer may have repaid amounts representing excessive profits to the Government incident to renegotiation and in making the payments received the benefit of the credit provided for by section 3806 (b) (1). Petitioner's tax liability for 1943 should be computed on the basis of the gross income, deductions, and net income as shown on the return, and such other adjustments as may be required, including any resulting from the instant redetermination, so that the tax as finally computed meets the requirements of the statute. It follows that under this method the full amount of taxes paid by the petitioner should be applied against the total tax liability in determining the amount of any deficiency or overpayment, and the respondent

should not, in this computation, treat the credits previously computed under section 3806 (b) (1) as rebates within the definition contained in section 271 (b) (2). It is not until the tax liability as such has been correctly determined that we have a basis for the computation of the credit under section 3806, and if a credit has been allowed for renegotiation purposes prior to the final determination of the tax liability as such, then the credit must be regarded as tentative and must necessarily fluctuate up or down, dependent upon what is finally determined to be the petitioner's correct tax liability.

\* \* \* \* \* \* \*

Whether the determination of excessive profits made by the Under Secretary of War is increased or decreased by the decision of this Court in the renegotiation proceedings, it will in no way affect the petitioner's tax liability for 1943 which we have here finally determined. Any finding as to excessive profits different from that initially made by the Under Secretary of War will be given final effect by a recomputation of the credit under section 3806. As we have previously stated, until that time, any credit allowed the petitioner under section 3806 will necessarily be tentative, a final credit being determinable only at such time as a final determination of the excessive profits is made.

At any rate, it is clear that the renegotiation cases which are pending before the Tax Court under other docket numbers are not before us in these proceedings. Just what effect our decision on the issues which have herein been decided will have in the renegotiation proceedings, we do not attempt to decide. Certainly, whether the amounts of petitioner's excessive profits are increased or decreased in the renegotiation proceedings which are now pending before us under other docket numbers can have no effect here.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: On the *res judicata* question reflected in the first headnote I think we have erred. The state judgment decision relied upon to prevent the application of *res judicata* was, as the majority opinion and findings of fact show, not an adversary proceeding, but one based upon agreement. The pertinent allegations of the petition there were admitted by the answer, that is, the petition alleged and the defendant's answer admitted the oral agreement to cancel exising contracts. There was no actual controversy between the parties. *Freuler* v. *Helvering*, 291 U. S. 35, indicates that a decree of a state court to be relied upon as conclusive here can not be one "in any sense a consent decree" and can not be "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." We have followed and applied this principle so many times that I do not see how we can fail to do so here. In *First-Mechanics National Bank of Trenton, Executor*, 40 B. T. A. 876, we declined to recognize a decree where there was no contest, but consent.

We relied on the *First-Mechanics National Bank* case in *Charles S. McVeigh*, 3 T. C. 1246, cited the *Freuler* case, and declined to be bound by a judgment which we considered collusive in the sense used in the *Freuler* case. We there cited a number of cases, including *Otto C. Botz*, 45 B. T. A. 970. In *Tatem Wofford*, 5 T. C. 1152, we held that a state court's adjudication of ownership of property on the basis of an admission thereof was not binding upon the Tax Court and that there must be a real controversy and in no sense a consent decree. The suit was in a circuit court, but was affirmed by the Supreme Court of Florida. In *Francis Doll*, 2 T. C. 726; affd., 149 Fed. (2d) 239, we followed the *Freuler* case in that matter. After respondent's determination and the filing of the petition and answer in this Court, a decree was entered by a Missouri court as to partnership. The petition in that court asked for a construction of a writing as to partnership and the answer admitted the material allegations. We held that such judgment was not controlling, saying that the answer had admitted the material allegations. It is to be noted that the judgment in the state court in the *Doll* case was a declaratory judgment. In *Leslie H. Green*, 7 T. C. 263, 274; affd., 168 Fed. (2d) 994, the situation was that after the filing of the petitions before this Court proceedings were instituted in a Michigan state court to obtain a decree construing the trust instruments in question. Notice was served upon the Commissioner of Internal Revenue. There was no controversy in issue and no object other than the purpose of obtaining the state court's interpretation of the instruments. Relying upon the *Freuler*, *Wofford*, and *Doll* cases, and noting that the pleadings in the state court presented no real controversy, and that, although the answer purported to put plaintiff on proof of many allegations, there was no evidence of proof being introduced, we concluded that the proceeding was collusive and not binding. To the same effect see *Erik Krag*, 8 T. C. 1091; *Estate of Mary Clare Milner*, 6 T. C. 874; and *James S. Reid Trust*, 6 T. C. 438. In the last named case an Ohio court, after controversy had arisen between the parties and the Treasury Department of the United States as to taxation of income, was asked to construe a trust agreement. The General Counsel for the Commissioner of Internal Revenue was notified. It did not appear whether answers were filed, but it was stipulated that the matter was not briefed. We found it to be collusive under the *Freuler* case and that there was no "real trial." I note also *Loggie* v. *Thomas*, 152 Fed. (2d) 636, wherein it was held that the fact that the state court had rendered a declaratory judgment with reference to the legal title to property as between trustee and *cestuis que trust* "does not foreclose an inquiry as to the liability of the trustee for taxes on the income from the same property involved in the state court judgment"; also *Sewell* v. *Commissioner*,

151 Fed. (2d) 765, where, after decision here and appeal to the Circuit Court of Appeals, Fifth Circuit, petitioners in that court moved to remand the case to the Tax Court for consideration by the Tax Court of a declaratory decree of the state court of Georgia rendered since the decision of the Tax Court. The Circuit Court held that, though the decision of the state court was binding between the parties in the settlement of their legal rights *inter sese*, it was not so between the parties and the United States over income taxes.

I can find no reason for not adhering to these repeated decisions in this matter. *Blair* v. *Commissioner*, 300 U. S. 5; *Commissioner* v. *Sunnen*, 333 U. S. 591; and *Masterson* v. *Commissioner*, 141 Fed. (2d) 391, relied upon by the majority, do not touch this question of non-adversary or consent judgment. *Gerrard E. Kelly Trust* v. *Commissioner*, 168 Fed. (2d) 198, does not touch it, but is based upon the fact that there was appeal from the state court judgment and a dissent in the appellate court. With all respect, I can not conceive why an appeal from a consent or nonadversary matter renders it less so—for, of course, the appeal could be *pro forma* and without real contest, as much as the original judgment. I note that in the *Tatem Wofford* case, *supra*, the state court judgment was affirmed by the Supreme Court of Florida, yet, as above stated, we declined to give effect thereto because it was an adjudication on the basis of an admission. We have therefore, apparently, passed upon this question. In any event, I would follow the numerous decisions above and decline to give effect to a state court decision, even though appealed, which was obviously nonadversary and equally obviously intended to be collusive in the sense of the language expressed in the *Freuler* case. I therefore dissent.

KERN, HARRON, OPPER, and LEMIRE, *JJ.*, agree with this dissent.