**ESTATE of Stephen P. FARISH, Jr., Deceased, Anne Francis Farish, Independent Executrix**

v.

**The UNITED STATES of America.**
**Civ. A. No. 14316.**

United States District Court
S. D. Texas,
Houston Division.
July 23, 1964.

John G. Heard, Carl Estes, II., Vinson, Elkins, Weems & Searls, Houston, Tex., for plaintiffs.

Woodrow Seals, U. S. Atty., Houston, Tex., Stanley F. Krysa, Robert L. Waters, Tax Division, Dept. of Justice, Fort Worth, Tex., for Government.

BREWSTER, District Judge.

Anne Francis Farish, Independent Executrix of the Estate of her deceased husband, Stephen P. Farish, Jr., has brought this action to recover federal estate taxes and interest alleged to have been erroneously assessed and collected from the estate. Jurisdiction exists under 28 U.S.C.A. § 1346(a) (1).

This controversy had its source in a dispute between the taxpayer and the Internal Revenue Service over the proper construction to be placed on certain language in each of two trust indentures providing for gifts over. Separate trusts were created by each of such instruments, but they involved the same beneficiaries and were generally similar in nature. The material provisions of the two trust agreements involved in this litigation are identical in wording.

The fundamental question in dispute is whether an indefeasible interest in the respective estates of the two trusts vested in Stephen P. Farish, Jr., when he attained thirty years of age, about two years prior to his death. The taxpayer says that the matter was settled contrary to the present contention of the government by two declaratory judgments of a district court of Harris County, Texas; and that, if not, the provisions of the trust agreements themselves require the construction that the interest of Stephen P. Farish, Jr., in the corpus of each trust estate was not to vest indefeasibly until such estate was actually distributed to him by the trustee. The government contends that the declaratory judgments were not binding for tax purposes because the state court proceedings were non-adversary and collusive; and that this Court should construe the terms of the two instruments and hold that indefeasible title vested in Stephen P. Farish, Jr., in each of the trust estates when he reached the age of thirty, regardless of whether there was any actual distribution. The government further claims that even in the event that each of the above questions is decided adversely to it, it is still entitled to prevail here for the reason that Stephen P. Farish, Jr., had a general power of appointment over each of the trust estates before his death.

Stephen Power Farish, Sr., and wife, Lottie Rice Farish, actually created three separate trusts in which their son, Stephen Power Farish, Jr., was the original beneficiary, and all of them were in existence at the time of the son's death. The first one, known by the interested parties as "Trust No. 1", was created by indenture dated November 10, 1933, between Stephen Power Farish, Sr., and wife, as settlors, and S. P. Farish & Company, as trustee. About three years later, the same settlors created two additional trusts. The indenture dated June 18, 1936, named Roland Tracy as trustee, and is generally referred to as "Trust No. 3." Roland Tracy was also an executive officer of S. P. Farish & Company. The one dated August 31, 1936, appointed S. P. Farish & Company, a corporation, trustee, and is called "Trust No. 2."

All three trust agreements were executed and delivered in Texas. The settlors, the trustees and the original beneficiaries

were residents of that State, and the trusts were to be administered there. Each of the trusts involved large and valuable estates.

There is no dispute here over the nature of the interest of Stephen P. Farish, Jr., in the corpus of Trust No. 1. The parties to this litigation have been in agreement on the fact that he did acquire an indefeasible interest, and that federal estate taxes were due by reason thereof. However, brief references will be made to matters in connection with Trust No. 1, because the nature of the provisions of the indenture creating it and the actions of the parties in connection therewith have some evidentiary value in regard to the questions of the intent of the settlors in connection with the gift over provisions of Trust No. 2 and Trust No. 3, and of the good faith of the persons involved in the declaratory judgment actions.

Section VI of the Trust No. 1 indenture provided, insofar as it is material here:

"The principal and income of the Trust Fund shall be held in trust for the benefit of the Grantor's son, STEPHEN POWER FARISH, JR., born September 8, 1924, until the latter attains thirty (30) years of age, at which time the trustee shall pay over to him the entire Trust Fund, including principal, income and all accumulations of every kind whatsoever * * *."

Section VI in the Trust No. 2 indenture was identical with the same numbered section in the Trust No. 3 indenture. They were in turn exactly the same in meaning as Section VI of the Trust No. 1 indenture, even though there were a few immaterial differences in the words used.

The picture is entirely different as to Section VII. That portion of the agreement creating Trust No. 1 provided:

"*In the event of the death of the Grantors' said son before he attains the age of thirty (30) years*, the Trust Fund, or the part thereof which has not been distributed to him at the time of his death, shall be held in trust for a period of twenty-one (21) years after the death of the Grantor's said son for the equal use and benefit of the children of the Grantors' said son who shall be living * * *." (Emphasis added).

Section VII in Trust No. 2 indenture was the same as Section VII in the one governing Trust No. 3; but they vary materially from the comparable section of Trust No. 1. Sections VII of Trust No. 2 and of Trust No. 3 both read as follows:

"*In the event of the death of the Grantors' said son before final distribution of the Trust Fund has been made to him,* the Trust Fund, or the part thereof which has not been distributed to him at the time of his death, shall be held in trust for a period of twenty-one (21) years after the death of the Grantors' said son for the equal use and benefit of the children of the Grantors' said son who shall be living * * *." (Emphasis added).

Stephen Power Farish, Jr., reached thirty years of age on September 8, 1954, and died about two years later, on June 18, 1956. No part of any of the respective estates of any of the three trusts was distributed to or received by him between the two dates above. Each of the trustees continued during that period to administer his trust in the same manner as he had done under the provisions of his trust indenture prior to September 8, 1954.

Stephen P. Farish, Jr., was survived by his wife, Anne Francis Farish, age twenty-five, and their only three children: Stephen P. Farish, III, born on November 20, 1951, George Rice Farish, born on February 1, 1953, and Martha Francis Farish, born on March 20, 1955. He left a will naming his wife independent executrix and sole legatee and devisee of his estate. She qualified as independent executrix shortly after the will was admitted to probate in Harris County, Texas, on August 9, 1956, and has served continuously in that capacity since that time.

The inventory, appraisement and list of claims of his estate filed in the Probate Court of Harris County, Texas, on August 7, 1957, by Anne Francis Farish in her representative capacity contained the following statement on page 2:

"(The Estate of Stephen P. Farish, Jr., Deceased, may have some interest under the trusts created by Stephen Power Farish, Sr., and Lottie Rice Farish, on November 10, 1933 (so-called Trust No. 1), August 31, 1936 (Trust No. 2) and June 18, 1936 (Trust No. 3). However, the extent of the Estate's interest, if any, and the value thereof has not been determined as of this date.)"

On September 18, 1957, Anne Francis Farish, acting in her representative capacity, timely filed a United States Federal Estate Tax Return (Form 706) for the estate of her deceased husband showing a federal estate tax liability of $1895.27, which was paid at the time the return was filed. The following notation appeared on Schedule F of that return:

"The Estate of Stephen P. Farish, Jr., Deceased, may have some interest in certain trust assets. However, the extent of the Estate's interest in such trust assets, if any, and the value thereof, if any, has not been determined as of this date."

Both the inventory and appraisement and the estate tax return were prepared by or under the direct supervision of one of the attorneys for Mrs. Farish and the estate who is representing her in this action.

Sometime shortly prior to November, 1957, Mrs. Farish, both individually and in her representative capacity for the estate, made oral demands on each of the respective trustees of the three trusts for distribution to her, in such capacities, of the entire trust funds still being administered by each of them. In the early part of November, 1957, Mr. George A. Hill, III., a competent and reputable attorney of the Houston Bar, was employed by each of the trustees to represent him in connection with the questions raised by the demands. After Mr. Hill had consulted with the trustees, had had conferences with counsel for Mrs. Farish, and had done some research on the matters, he requested that the demands be presented in writing. Mrs. Farish complied and presented separate demands dated November 14, 1957, on each of the trustees. The language of each of the demands pertinent here is identical and reads:

"Stephen Power Farish, Jr. passed away on June 18, 1956, and thereafter his will was admitted to probate by the Probate Court of Harris County, Texas, and I have duly qualified and am now serving as the Independent Executrix under said Will and of the Estate of Stephen Power Farish, Jr., Deceased. Under said Will I am named and constituted as the sole devisee and legatee, in fee simple, of all of the properties, real, personal and mixed, both separate and community, of said Stephen Power Farish, Jr., which was owned by him or in which he had an interest at the time of his death.

"I, therefore, hereby make demand that you immediately transfer to me all properties held by you as trustee under that trust indenture."

In the latter part of November, 1957, about two months after the federal estate tax return was filed, S. P. Farish & Company, as trustee of Trust No. 1, acting upon the advice of its counsel, Mr. Hill, acceded to the demand of Mrs. Farish on it and distributed to her as Independent Executrix of the Estate of Stephen P. Farish, Jr., deceased, all of the assets of that trust estate.

Both S. P. Farish & Company, as trustee of Trust No. 2, and Roland Tracy, as trustee of Trust No. 3, acting upon the advice of their counsel, Mr. Hill, in separate letters dated November 21, 1957, rejected the respective demands Mrs. Farish had made on each of them. The

pertinent part of the refusal of the trustee of Trust No. 2 read:

" * * * this is to advise that S. P. Farish & Company, as Trustee of such Stephen Power Farish, Jr., Trust No. 2, is presently invested with the legal title of all of the properties comprising such trust and is presently holding such properties as Trustee for the use and benefit of the three minor children of Stephen Power Farish, Jr., namely, Stephen Power Farish, III, George Rice Farish and Martha Francis Farish.

"Because of the existing trust mentioned above, S. P. Farish & Company cannot and will not comply, immediately or at any time hereafter, with your request that the properties of such trust be transferred to you."

The refusal of the trustee of Trust No. 3 was similar in language.

The action of the trustee of Trust No. 1 in honoring Mrs. Farish's demand on that trust, and the contrary actions of the respective trustees of Trust No. 2 and Trust No. 3 in refusing her similar demands on each of those trusts, were based on the fact that the provisions for gift over in the Trust No. 1 indenture were conditioned on *"the death of the Grantors' said son before he attains the age of thirty (30) years,"* and that the settlors changed that language in the later indentures creating respectively Trust No. 2 and Trust No. 3 so as to condition each gift over on *"the death of the Grantors' said son before final distribution of the Trust Fund has been made to him."* (Emphasis added).

Each of the trustees of Trust No. 2 and Trust No. 3 then filed a declaratory judgment action in the 153rd Judicial District Court of Harris County, Texas, for an interpretation of the indenture creating the trust he was administering, made necessary by the demands of Mrs. Farish. The suit with respect to Trust No. 2 was filed on November 18, 1957, and was docket No. 497,550, S. P. Farish & Company, Trustee v. Anne Francis Farish, Individually and as Independent Executrix of the Estate of Stephen P. Farish, Jr., Deceased, Stephen Power Farish, III., George Rice Farish, and Martha Francis Farish. The action with respect to Trust No. 3 was filed on November 19, 1957, and was docket No. 497,628, Roland Tracy, Trustee v. Anne Francis Farish, Individually and as Independent Executrix of the Estate of Stephen P. Farish, Jr., Deceased, Stephen Power Farish, III., George Rice Farish, and Martha Francis Farish. The relief prayed for in each of the cases was substantially the same. The trustee in each instance asked that the trust indenture under which he was serving be construed, and that it be declared that any interest of Stephen P. Farish, Jr., in the trust terminated at the time of his death, with the result that his estate and his legatees and devisees had no claim on it, and that all right, title and interest in the trust properties vested in his children to be administered under the trust provided for in such indenture.

Process was duly served on the defendants in each case. On November 27, 1957, Hon. Wilmer Hunt, Judge of the court in which the actions were filed, appointed I. M. Wilford, a member of the Houston Bar, to act as guardian *ad litem* for the three minor children in each of the cases. Answers were duly and timely filed for all of the defendants around the middle of December, 1957. The answers filed by Mrs. Farish asserted in effect that the property belonged to her husband's estate and therefore to her because indefeasible title vested in her husband when he reached the age of thirty. The answers filed by the guardian ad litem on behalf of the children agreed with the positions taken by the respective trustees of Trust No. 2 and Trust No. 3 that none of the properties of said trusts was ever distributed to Stephen P. Farish, Jr., after he reached thirty years of age, and that therefore no indefeasible title thereto vested in him.

Supplemental petitions of each of the trustees filed in each case about a month before the trial on the merits, generally

denied the allegations in Mrs. Farish's answer to which it was directed, and further pleaded estoppel and waiver in bar of her claims.

The distribution of the assets of Trust No. 1 brought about the filing by Anne Francis Farish, as independent executrix of her deceased husband's estate, of an amended United States Federal Estate Tax Return on March 18, 1958, consisting of new schedules F. M. O. and P., and of a Supplemental Inventory and Appraisement of the estate on April 3, 1958. Both documents were prepared by or under the supervision of the same attorneys for Mrs. Farish who had been representing her in the tax and probate proceedings from the beginning. They reported and accounted fully for all of the properties and funds of Trust No. 1. The amended federal estate tax return showed an additional tax liability of $137,117.73, which was paid with the filing of the return. No mention was made in that return of Trust No. 2 and Trust No. 3, and nothing was said about the pendency of the declaratory judgment actions in Harris County, Texas.

On April 18, 1958, an agreed statement of facts which had been executed by the respective attorneys for the several interested parties was filed in each of the suits for declaratory judgment. During the trial of the present case, counsel for the government told the court that no question was made about the action of the parties in stipulating the facts in the state actions, as the only possible issues in those cases were questions of law.

The attorney for the plaintiffs also filed his "Memorandum of Authorities and Trial Brief" in each of the state cases on April 18, 1958. The briefs were filed after thorough and extensive research by Mr. Hill. The guardian *ad litem* had assisted in the research and preparation of the briefs filed by the plaintiffs, and decided to join in them rather than file separate briefs. The briefs sought to support the positions taken in the original petitions filed by each of the plaintiffs and in the answers of the guardian *ad litem* filed for the children. There is no evidence that a brief was filed for Mrs. Farish.

The cases in the state court were tried on their merits before Judge Hunt on May 12, 1958. George A. Hill represented the trustees, S. P. Farish & Company and Roland Tracy, in each of those two suits. Leroy Jeffers and John C. Heard, of the firm of Vinson, Elkins, Weems & Searls, represented Mrs. Farish. I. M. Wilford represented the minor defendants as guardian *ad litem*. Those suits were adversary in nature and were contested in good faith. They were decided by Judge Hunt on the merits after having considered the oral arguments and the written briefs filed almost a month before the trial. The judgments determined the ownership of the assets of Trusts No. 2 and No. 3 under Texas law and were in no sense agreed judgments or compromise decrees. Counsel for the respective parties were paid substantial fees and the guardian *ad litem* was paid an appropriate fee.

The judgments held that the interest of Stephen P. Farish, Jr., in each trust was a defeasible, fee simple estate, postponed in enjoyment until final distribution of the principal thereof was made to him after his thirtieth birthday and during his lifetime, and defeasible upon the occurrence of his death without having actually received the property of such trusts. They further held that since no distribution of trust estates had been made to Stephen P. Farish, Jr., after his thirtieth birthday and prior to his death, his interest therein ceased and terminated and was divested from him, and was vested by operation of each of the trust indentures in his children, Stephen Power Farish, III., George Rice Farish, and Martha Francis Farish, subject in all respects to the terms and provisions of such indentures. No appeal was taken by any of the parties, and each of the judgments became a final determination of the property rights there involved.

After the litigation in the state court had been terminated, the Commissioner of Internal Revenue caused the federal

estate tax return, as amended, to be examined; and he determined a deficiency in the amount of $233,914.44, based primarily on his position that indefeasible title to the respective properties of Trust No. 2 and Trust No. 3 vested in Stephen P. Farish, Jr., when he attained the age of thirty. A deficiency notice was duly mailed to Mrs. Farish in her representative capacity. She paid the amount of the deficiency and interest, and has complied with all the requirements necessary to entitle her to maintain this action for refund.

 The general rule is that in the absence of collusion a judgment of a state court of competent jurisdiction adjudicating title to or other rights in property is conclusive for the determination of federal tax consequences flowing from those property rights. Freuler v. Helvering, 1934, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 1937, 300 U.S. 5, 10, 57 S.Ct. 330, 81 L.Ed. 465; Helvering v. Safe Deposit & Trust Co., 1942, 316 U.S. 56, 64, 62 S.Ct. 925, 86 L.Ed. 1266; Saulsbury v. United States, 5 Cir., 1952, 199 F.2d 578; Stallworth's Estate v. Commissioner, 5 Cir., 1958, 260 F.2d 760; First National Bank of Montgomery v. United States, D.C. Ala., 1959, 176 F.Supp. 763, affirmed, 5 Cir., 285 F.2d 123; Henricksen v. Baker-Boyer Nat'l. Bank, 9 Cir., 1944, 139 F.2d 877; Eisenmenger v. Commissioner, 8 Cir., 1944, 145 F.2d 103; Kelly's Trust v. Commissioner, 2 Cir., 1948, 168 F.2d 198; Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218; Faulkerson's Estate v. United States, 7 Cir., 1962, 301 F.2d 231; Darlington's Estate v. C.I.R., 3 Cir., 1962, 302 F.2d 693; Peyton's Estate v. C.I.R., 8 Cir., 1963, 323 F.2d 438; Flitcroft v. C.I.R., 9 Cir., 1964, 328 F.2d 449; Estate of Balzereit, 1942, 46 B.T.A. 959; Thomas Flexible Coupling Co., 1950, 14 T.C. 802; Mary Kent Miller, 1963, T.C.Memo. 1963–215, CCH Dec. 26, 256. See also: Colowick, "The Binding Effect of a State Court's Decision in a Subsequent Federal Income Tax Case," 12 Tax Law Review 213 (1957).

The reason for the rule appears in the following excerpt from the opinion in Helvering v. Stuart, 1942, 317 U.S. 154, 161–162, 63 S.Ct. 140, 144, 145, 87 L.Ed. 154:

" * * * When Congress fixed a tax on the possibility of the revesting of property or the distribution of income, the 'necessary implication,' we think, is that the possibility is to be determined by the state law. Grantees under deeds, wills and trusts, alike, take according to the rule of the state law. The power to transfer or distribute assets of a trust is essentially a matter of local law. * * * Congress has selected an event, that is the receipt or distributions of trust funds by or to a grantor, normally brought about by local law, and has directed a tax to be levied if that event may occur. Whether that event may or may not occur depends upon the interpretation placed upon the terms of the instrument by state law. Once rights are obtained by local law, whatever they may be called, these rights are subject to the federal definition of taxability. Recently in dealing with the estate tax levied upon the value of property passing under a general power, we said that 'state law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.' Morgan v. Commissioner, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585 (a case dealing with the taxability at death of property passing under a general power of appointment). In this case, as in Lyeth v. Hoey, we were determining what interests or rights should be taxed, not what interests or rights had been created and therefore applied the federal rule. * * * In this view the rules of law to be applied are those of Illinois. That state is the residence of the parties, the place of execution of the instrument, as well as the jurisdiction

**228**

chosen by the parties to govern the instrument."

■ While some cases, such as Gallagher v. Smith and Darlington's Estate v. C.I.R., both supra, hold that the fact that the state court proceeding was non-adversary in character is only a circumstance to be considered in deciding whether such proceeding was collusive, it appears to be settled in the Fifth Circuit that the state court judgment will not be accepted as foreclosing the property rights sought to be taxed, unless it was rendered in a trial that was adversary and non-collusive. Saulsbury v. United States and Stallworth's Estate v. C.I.R., both supra.

■ Sheer fraud is, of course, collusion, Peyton's Estate v. C.I.R., supra; but proceedings involving no actual bad faith can be collusive, as that term is being used here. The following statement in Saulsbury v. United States, supra, is accepted as furnishing the general guide in the Fifth Circuit for determining whether the state court proceeding is collusive:

"The order of the state court directing that no further payments of income be made to appellant until said loan was paid, we think, is not entitled to any weight, since it did not determine the rights of the parties under the trust instrument. Moreover, it does not affirmatively appear that said order was obtained in an adversary proceeding and that there was no collusion. By the word collusion, we do not mean to imply fraudulent or improper conduct, but simply that all interested parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income, and no bona fide controversy between the trustee and the beneficiary as to property rights under the trust instrument. The order of the state

court frustrated the plan of the donor to the extent that it prohibited payment of income to the beneficiary. * * * *" (199 F.2d at 580).

The parties hereto are in no real disagreement over the above stated principles of law or their applicability to this case. The taxpayer admits that they control the disposition of the first question in this case; and the government says in its brief on file herein:

"The federal estate tax is admittedly a tax on the passing of property interests. Admittedly, also, property interests are not determined by federal law, but rather by reference to state law. Therefore, it has always been held that adjudication of property interests in a bona fide, adversary proceeding concludes the issue of property ownership decided by a state court. It has long been recognized, however, that such conclusive effect will not be given a state court proceeding where such proceeding is non-adversary and collusive."

The Tax Court, in Mary K. Miller, 1963, 22 TCM 1081, in discussing the burden of proof on the issue of collusion, said:

"Since the law presumes that court proceedings are regular and valid, we think in a situation like this, where 'collusion' is asserted by (the government), it is incumbent upon (it) to produce at least some evidence to that effect."

The arguments [1] made by the government in support of its position that the state court proceedings here involved were non-adversary and collusive follow in italics, with the Court's comments given in connection with each of them.

*"Other than a substantial tax savings, no real purpose has been shown for the proceedings."*

There was a real and just reason for the state court actions. There were two sets of possible claimants of the

1. The arguments are quoted or given in substance from the government's brief filed herein.

trust estates. One had made oral and written demands of the trustees for the properties. The other was composed of minor children whom the terms of the trust indentures appeared to favor. The decision of the question had to be made without the aid of a Texas case directly in point. The government says that there is no such case even now. The trustees had no course other than to seek the relief provided for in the Uniform Declaratory Judgments Act. Article 2524–1, Vernon's Ann.Texas Civil Statutes. The following portion of the statute shows that one of its purposes was to settle questions such as these trustees had before them:

"Sec. 4. Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto:

"(a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others; or

"(b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

See Kimble v. Baker, Tex.Civ.App., 1955, 285 S.W.2d 425.

*The executrix gave no notice to the Internal Revenue Service of the existence of the three trusts or of the pendency of the declaration judgment actions.*

While the existence of the three separate trusts was not specifically mentioned in the federal estate tax returns filed by the estate, the notation already quoted from Schedule F of the return filed on September 18, 1957, did say that the estate "may have some interest in certain trust assets," the extent and value of which had not been determined at that time. The inventory filed in the estate proceedings in the Probate Court of Harris County, Texas, also already quoted above, did specifically identify the three trusts, and say that the estate might have some interest in them.

■ There is nothing in the cases on this subject which indicates that failure to give notice of the pendency of the state court proceedings to the Internal Revenue Service is determinative of whether the state court judgment was collusive. The notice to which the cases seem to have reference is notice to all the possible claimants of interest in the property in litigation in the state court. Freuler v. Helvering, supra, 291 U.S., at page 38, 54 S.Ct. 308, 78 L.Ed. 634. Notice to all such parties is required to avoid an *ex parte* hearing, which has been held in some of the cases above cited to be collusive. Faulkerson's Estate v. United States, supra, 301 F.2d at page 232. It is difficult to see what purpose notice to the Commissioner would have served in this case, as he appears to have followed a hands-off policy toward such state court actions. He has instructed his subordinates that generally there should be no interference with state court proceedings. Mimeograph 6134, 4 C.C.H. #6137 (1947). A recent attempt to make the District Director a party to a proceeding seeking court action in respect to a trust was successfully contested. Botsford v. Riddell, 9 Cir., 1960, 283 F.2d 298. It appears that while failure to give notice to the Internal Revenue Service is a fact that should properly be considered along with all the others in this case in deciding whether there was collusion, such fact in and of itself is not sufficient to render the state court judgments inoperative in this action. James Reid Trust, 1946, 6 T.C. 438; Leslie Green, 1946, 7 T.C. 263; Peyton's Estate v. C.I.R., supra, 323 F.2d at pages 443–444; Flitcroft v. C.I.R., supra, 328 F.2d at 455.

*The actual conduct of the proceedings in the state court showed that the repre-*

*sentatives of the estate made no bona fide effort to prevail, and that the judgments were in fact only consent decrees.*

The first circumstance offered in support of this argument is that Mr. Charles I. Francis, father of Mrs. Stephen P. Farish, Jr., told Mr. George A. Hill that he wanted him to accept employment by the trustees in the controversy that led to the filing of the suits for declaratory judgment. The government has construed that action as being in effect an employment by Mrs. Farish, through her father, of the attorney to represent the trusts, with the result that he was not free to advocate fully the interest of such trusts. The evidence does not justify any such inference or any other implication of bad faith or wrongdoing. Mr. Hill was a friend of Mr. Francis and of the creators of the three trusts. Mr. Francis had been a prominent and reputable lawyer in Houston for a number of years. His daughter was facing litigation where she and her children would be asserting conflicting claims to the trust properties. A lawyer of Mr. Francis' experience knew the importance of the trustees being represented by an honorable and capable lawyer, for the purpose of preventing any possibility of the kind of animosity that is so frequently seen where members of a family are in litigation among themselves over an estate. As a lawyer, he realized that Mr. Hill would probably not take the case under the circumstances unless he knew there would be no objection from the families involved. Mr. Francis was doing no more than he ought to have done when he let Mr. Hill know that he had no objection to his taking employment by the trustees.

The government criticizes the actual conduct of the state court litigation on the grounds that the attorneys for the estate filed no brief and made an oral argument to the court that amounted in effect to saying that they did not want to prevail, that none of the parties called the court's attention to a pertinent A.L.R. annotation, that the trial was before a very busy judge, that the judge pronounced his judgments from the bench at the conclusion of the trial, that there were never any efforts to effect a compromise, that no appeal was taken, and that the holdings of the state court were not in accord with the law.

The evidence fails to show whether any brief was filed on behalf of the estate. A brief prepared after considerable joint research by Mr. Hill and the guardian *ad litem* was filed on behalf of the trustees. While it did not contain the 142 A.L.R. 136 annotation, it was a good trial brief. The proper legal test for determining the question presented to the state court was fairly presented. As a consequence of the government's position in the present case that this Court must ignore the state court judgments and arrive at its own construction of the trust declarations, both parties have included in their briefs here all the authorities they could find on the fundamental question that was before the state court. They have cited no case directly in point. They agree that the test to be applied to the trust indentures is: "What was the intention of the trustors?" Sufficient authorities were cited to the state court to advise him fully of that test, even if we were to assume that he did not already know it thirty years after he had been admitted to practice. The annotation in A.L.R. does not change the test to be applied in construing the trust indentures; and, in the final analysis, with or without the annotation, the state court had to try to ascertain the intention of the trustees from the terms of the indentures they had executed.

The construction the government seeks to put on Mr. Jeffers' oral argument on behalf of the estate is not justified. The substance of the argument was that while Mrs. Farish did not want to deprive her children of anything that was legally theirs, her position was such that she could not give the property away, and that she was asking for everything to which she was legally entitled. The more one sees of parents and children, and of brothers and sisters, letting their greed

for property they have a chance to get for nothing cause them to become bitter against each other for life, the more he is convinced that Mrs. Farish took the only decent and proper position. That animosity in family litigation is not necessary to establish the adversary character of it has been made clear in such cases as Gallagher v. Smith and Darlington's Estate v. C.I.R., both supra. In the Darlington case, the Court said: " * * Because the petitioners' request did not develop into a fight between the parties interested in the estate does not make the adjudication any less conclusive * * " 302 F.2d at 695. Judge Maris, speaking for the Court *en banc*, said in the Gallagher case that it was "highly commendable" for members of a family group to take a position in litigation among themselves that would prevent "that unseemly and disturbing spectacle, a family fight over a deceased relative's property." 223 F.2d at 225.

Judgments would be worth very little in any kind of proceeding if courts were to accept the government's argument that one pronounced by a busy judge from the bench at the close of a case is entitled to no credit. Judge Hunt had the stipulation of facts and the briefs about a month before the trial of the cases, and the advantage of oral arguments of outstanding lawyers at the trial itself. The government admits here that there were no possible fact issues in the state court proceedings, and that there was only one legal question. The argument of the government in this connection completely overlooks the benefit which Judge Hunt had from knowledge gained during his service on the bench since 1947, and during his private practice of the law for almost twenty years before that, as well as the help that came from having a case prepared and presented by reputable, able and experienced lawyers. When those factors are considered along with all the others in the case, the manner in which the case was presented by the attorneys and in which the trial was conducted by the judge affords no support for the government's argument.

*There were no efforts to compromise the state court actions.*

No case has been cited to support the argument that failure to make an effort to compromise the litigation in the state court is a factor indicating collusion. Even if it were a relevant circumstance, it would not be persuasive here. The only question was a legal one to be determined from the construction of two written instruments. The trustees, the executrix and the guardian *ad litem* were in the litigation in their respective fiduciary capacities, and three minors were involved. The opposing claimants were parent and children. It was hardly the kind of controversy that would lend itself to settlement.

*None of the parties appealed from the judgments of the state court.*

While the Eighth Circuit has held that failure to appeal makes the state court judgment inoperative in subsequent federal tax litigation, Peyton's Estate v. C.I.R., supra, and the Seventh Circuit has recognized non-appealed state court judgments only under certain restrictions, Faulkerson's Estate v. United. States, supra, the courts generally have accepted such judgments, unless it was determined from all the factors, including the failure to appeal, that they were rendered in non-adversary and collusive proceedings. Freuler v. Helvering, supra; Henricksen v. Baker-Boyer Nat'l. Bank, 9 Cir., 1944, 139 F.2d 877; Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218; Darlington's Estate v. C.I.R., 3 Cir., 1962, 302 F.2d 693; Fliteroft v. C.I.R., 9 Cir., 1964, 328 F.2d 449; Estate of Balzereit, 1942, 46 B.T.A. 959; Thomas Flexible Coupling Co., 1950, 14 T.C. 802. The failure to appeal has therefore been considered along with all the other pertinent facts in this case in determining whether the state court proceedings were adversary and non-collusive in nature.

*The government's last argument is that the state court's holding that the gift over provisions of the respective trust indentures creating Trust No. 2 and Trust No. 3 vested only a defeasible title*

*in Stephen P. Farish, Jr., was contrary to the law.*

■ Some interesting questions might be posed if the state court holdings were not legally sound. The basis of the general rule governing conclusiveness of state court judgments in this kind of cases is that when they are rendered by courts of competent jurisdiction, they permanently settle the property rights of the parties to the action. Helvering v. Stuart, supra. A court having jurisdiction of the subject matter and the parties has jurisdiction to make a wrong decision. Hardenbergh v. Commissioner, 8 Cir., 1952, 198 F.2d 63, cert. denied 344 U.S. 836, 73 S.Ct. 45, 97 L.Ed. 650. A judgment rendered in such a proceeding, even though based on an erroneous interpretation or application of the law, would be an effective and final adjudication of the property rights involved unless set aside in a manner authorized by law. Faulkerson's Estate v. United States, by the Seventh Circuit, and Peyton's Estate v. C.I.R., by the Eighth Circuit, gave strong weight, if not controlling effect, to the fact that the state court judgment was contrary to the established law of the state where the court was located. The Ninth Circuit recently held in Flitcroft v. C.I.R., supra, that "whether the state court reached the correct result" was only one of the factors to be considered in determining the existence of collusion. Saulsbury v. United States, supra, by the Fifth Circuit, emphasized that the order of the state court there involved frustrated the plan of the donor. In view of the reason given in Helvering v. Stuart, supra, for holding that a state court judgment forecloses the property issues in this kind of case, the better rule would appear to be to consider the correctness of the result reached in the state court proceeding as one of the factors bearing on the question of whether that proceeding was adversary and non-collusive.

■ The Court is of the opinion, however, that Judge Hunt reached the correct result in construing the two trust indentures. The rule for construing trust instruments has been settled in Texas since Parrish v. Mills, Tex.Civ.App., 1907, 102 S.W. 184, affirmed 101 Tex. 276, 106 S.W. 882, where the Court said:

"In that valuable legal compendium, the American & English Encyclopedia of Law, it is said: 'In construing instruments creating or declaring trusts, the rule is that the intent of the parties controls, and that the substance and effect of the instrument as a whole must be considered, and its mere form will be disregarded.' 28 Am. & Eng. Ency. Law (2d Ed.) p. 910. And in volume 17, subd. 12, p. 21 (2d Ed.) it is said: 'In interpreting a writing, the court, in order to determine its meaning, will consider all the facts and circumstances attending its execution. Among the circumstances so considered are the relation of the parties, the nature and situation of the subject-matter, and the apparent purpose of making the instrument of contract in question. * * * It is but another statement of the same rule to say, as is frequently done, that the court will, if necessary, put itself in the place of the parties and read the instrument in the light of the circumstances surrounding them at the time it was made and of the objects which they evidently had in view.'" (102 S.W. at 187)

42 Tex.Jur., p. 621, says that the rules of construction of trust instruments are the same as those for interpretation of wills and other written instruments. See also Penix v. First National Bank of Paris, Tex.Civ.App., 1953, 260 S.W.2d 63, error refused.

■ ■ When the Court puts itself in the place of the parties and reads the instruments in the light of the circumstances surrounding them at the time they were made and of the objects which they evidently had in view, as the rule says it must do, the conclusion is plain that the trustors intended that the title to the respective estates of Trust No. 2 and Trust No. 3 should vest indefeasibly in their son only when such prop-

erties should actually be distributed to him. One of the important "circumstances surrounding them at the time" of the execution of the two trust instruments in question was that they then had in existence a trust created by an agreement which provided that in the event of the death of their son before he attained the age of thirty years, the part of the property of that trust then on hand should be held in trust for an additional period for the living children of that son. They changed the condition in the respective trust declarations creating Trust No. 2 and Trust No. 3, so as to provide that the trust should continue for their grandchildren if their son died before final distribution of the trust properties had been made to him. Those words had real meaning. 3 Scott, Trusts #345; Swobada v. United States, 3 Cir., 1958, 258 F.2d 848; Rothwell v. Rothwell, 283 Mass. 563, 186 N.E. 662. The final distribution of a trust is not required to be made simultaneously with the happening of a contingency provided for in the declaration, as the trustees are entitled to a reasonable time to make such distribution. Kimble v. Baker, Tex.Civ. App., 1955, 285 S.W.2d 425. So important a change of language as was made by the trustors in this instance, where three trust agreements were substantially the same in other material respects, cannot be disregarded. To give it no meaning would be to ignore the rule that the trustors were presumed to know the terms of the three written instruments signed by them. This change made in the setting that existed is sufficient in itself to distinguish this case from the authorities relied upon by the government. The Court therefore concludes that only a defeasible title to the respective estates of Trust No. 2 and Trust No. 3 vested in Stephen P. Farish, Jr., when he reached the age of thirty years.

When all the facts and circumstances relevant to the state court proceedings are considered together, the Court is of the opinion that the judgments in question were rendered in adversary and non-collusive actions. There was a valid motive for the litigation aside from the tax implications. The cases were not *ex parte* proceedings or suits filed and rushed to an overnight conclusion. The actions were brought in a court of record of original, competent jurisdiction almost six months before they were tried. All notices and process required by law were served on the parties at interest in the litigation. The facts were by nature undisputed, and they were stipulated in writing and delivered to the judge along with a trial brief about a month before the trial. Pleadings were filed by each set of parties asserting their interest in the trust property in question. Each party was represented by able, reputable counsel at the trial, who in good faith advocated his client's cause. The attorneys' fees paid them based in part on the time spent on the case showed that they were doing much more than making formal appearances. The issues were fairly presented in a trial before a conscientious, respected, able and experienced judge. The judgments rendered represented his own independent decisions. They were not consent decrees in any sense of the word. The property rights of the parties in the two trust estates were forever decided by them. Under such circumstances, the judgments should be given conclusive effect in this action insofar as they affect the property rights of the parties adjudicated by them.

The government claims that even though Stephen P. Farish, Jr., did not have indefeasible title to the trust properties in question, it is still entitled to prevail on the ground that he held a general power of appointment created subsequent to October 21, 1942, over the assets of each of the two trusts. It bases this contention upon Sec. 2041, of the 1954 Code, 26 U.S.C.A. § 2041, and on Sec. 2041-1(b) (1), Treasury Regulations on Estate Tax (1954 Code), 26 C.F. R., Sec. 20.2041-1(b) (1).

Any general power of appointment must have had its source in the instruments creating the trust estates. Under the construction this Court has put on

the indentures, no such power was vested in Stephen P. Farish, Jr. If it was, it came into existence on the dates such indentures were executed and delivered in 1936. United States v. Merchants National Bank of Mobile, 5 Cir., 1958, 261 F.2d 570. Since the dates of creation were prior to October 21, 1942, and the powers, if they existed, were never exercised by Stephen P. Farish, Jr., this contention of the government is not tenable under the statute above cited.

This opinion will serve as findings of fact and conclusions of law. Rule 52(a), Federal Rules of Civil Procedure. Judgment will be entered for the plaintiff in accordance with them.