The **FIRST NATIONAL BANK OF FORT WORTH, F. B. Walker and S. M. O'Brien, Independent Executors of the Estate of Genevieve E. Tillar, Deceased,**

v.

The **UNITED STATES.**

Civ. A. 4–411.

United States District Court
N. D. Texas,
Fort Worth Division.
April 1, 1969.

Thompson, Walker, Smith & Shannon, Fort Worth, Tex., for plaintiffs.

Robert L. Waters, Tax Division, Dept. of Justice, Fort Worth, Tex., for defendant.

## OPINION

BREWSTER, District Judge.

This is an action for refund of federal estate taxes and interest paid by the estate of Genevieve E. Tillar, deceased, as a result of an alleged over-assessment by the Commissioner.

The Court has jurisdiction. 28 U.S.C. A. § 1346(a) (1).

Section 2053 of the Internal Revenue Code of 1954 provides that for the purposes of federal estate tax, "the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts * * * for administration expenses * * * as are allowable by the laws of the jurisdiction

\* \* \* under which the estate is being administered." The present will of Mrs. Tillar was admitted to probate in Tarrant County, Texas, as a result of a settlement with Mrs. Elizabeth Herbert, the proponent of another purported will of Mrs. Tillar in a separate proceeding in the same probate court. The consideration for the settlement was $675,000.00 cash and the recognition of the bequests made to Mrs. Herbert in the will admitted to probate. Part of the cash settlement went to pay the fees of Mrs. Herbert's attorneys. Section 243 of the Texas Probate Code, V.A.T.S. provides: "When any person designated as executor in a will, or as administrator with the will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings." An order was obtained from the probate court purporting to approve the payment of such fee in the amount of $125,000.00. The estate, in its estate tax return, deducted the fee from the value of the gross estate as an administrative expense. Upon examination of the return, the deduction was disallowed. The reason given by the examiner was that "The amount paid by the estate was in effect part of the Will contest settlement and not an expense to the estate."

The estate paid the amount of the assessment due to disallowance of this deduction, and interest thereon, totalling $83,500.19. It has complied with all requirements for the prosecution of this action to recover that amount and interest.

The questions for decision are whether the estate was entitled to deduct any of the attorney's fee, and if so, what amount.

The government contends that the disallowance was proper because the unsuccessful proponent did not prosecute her action for probate of the alleged will of Mrs. Tillar in good faith and with just cause; and, alternatively, that the estate was not entitled to deduct all of the $125,000.00 because it exceeded the amount of a reasonable cash fee for the services rendered in attempting to get the purported will probated. It says that the attorneys were representing Mrs. Herbert both as putative executrix and as an heir or legatee, putative or otherwise, and that the deduction should not exceed an amount that would represent a reasonable cash fee certain for their services to her as putative executrix.

The estate claims that it is entitled to a deduction for the full amount of $125,000.00 on the grounds that the order of the probate court is conclusive on the question of the amount, and, alternatively, that, aside from the order, $125,000.00 was a reasonable fee.

The Court is of the opinion that the estate was entitled to a deduction for a reasonable fee for Mrs. Herbert's attorneys, and that the amount thereof should have been $50,000.00.

The testatrix, a widow who resided in Fort Worth, Texas, died in Los Angeles, California on December 28, 1961, at the age of 89 years. She left an estate having a gross value of about 6½ million. She had no descendants. Her nearest relative was an 84 year old sister, Mrs. Elizabeth Eagon Hurst. Her only other relatives were a niece, Elizabeth Hurst Herbert, 49 years of age, wife of Montague M. Herbert and daughter of Mrs. Hurst, and a grandniece, Genevieve McIntosh Reynolds. All of the relatives lived in Los Angeles.

Two purported wills of Mrs. Tillar were offered for probate in the County Court of Tarrant County, Texas, Sitting in Probate, within thirty days after her death. On January 2, 1962, Mrs. Herbert filed an application under Cause No. 31957 for probate of an instrument bearing date of July 7, 1961, as the last will of Mrs. Tillar. About a week later, on January 10th, The First National Bank of Fort Worth, F. B. Walker and S. M. O'Brien filed a petition under Cause No. 31993 to probate an instrument dated March 9, 1960, as her last will. On Jan-

uary 10th, the parties named as trustees and beneficiaries of the trust created by the instrument of March 9, 1960, filed a contest of the probate of the instrument of July 7, 1961, on the grounds that it was not properly executed, that it was the product of undue influence, and that Mrs. Tillar lacked testamentary capacity at the time she signed it.

The 1961 instrument offered by Mrs. Herbert provided for bequests totalling $60,000.00 to three individuals and for the residue to go to Mrs. Herbert. She was named independent executrix without bond.

The 1960 instrument created monthly annuities for Mrs. Hurst and Mrs. Herbert of $400.00 and $1,000.00, respectively, made a few comparatively small bequests, and left the residue in trust for the benefit of three worthy Fort Worth charities.

Mrs. Herbert had counsel in Los Angeles, Dallas and Fort Worth, but those in California apparently took no active part in the proceedings in Texas. On January 19, 1962, she entered into a written contract with the Dallas law firm of Hutchison, Shipp & Look reciting that a contest of the purported will offered for probate by her had been filed, and employing the attorneys "to prosecute and handle her claim under the will of her aunt and to establish her rights of inheritance in and to the estate of Genevieve E. Tillar." The compensation of the attorneys provided for in the contract was "a contingent fee of 25 per cent of all gross moneys and properties in excess of $500,000.00 recovered for and on behalf of Client."

The January 19th contract with the attorneys was superseded by a written agreement dated the following March 5th. It contained the same provisions as the first one in regard to the basic 25% contingent fee of any recovery over $500,000.00. The only new provision of the March 5th contract which is material now set out that in the event of settlement, the contingent fee was to be 25% of any recovery over $385,000.00.

Hutchison, Shipp & Look associated a Fort Worth law firm to work with them under the terms of the contingent fee contract.

By the first of July, 1962, extensive investigation, discovery and other preparation for trial had convinced the respective attorneys for each set of proponents that the controversy ought to be settled. The testatrix was old and had been under care of nurses and doctors for a long time. Some time during the six months between the date of the will she was proposing and the time of Mrs. Tillar's death, Mrs. Herbert had placed herself in the position of admitting Mrs. Tillar's incompetency to manage her affairs by instituting a proceeding for the appointment of a guardian for Mrs. Tillar's estate. The will Mrs. Herbert proposed was crudely prepared from the standpoint of composition, typing and content. It was apparent from its face that it was "home made". The subscribing witnesses were the husband and the mother of Mrs. Herbert, the principal beneficiary. Mrs. Hurst, the mother of Mrs. Herbert and the sister of Mrs. Tillar, was in such condition at the time of the proceedings in the probate court in Tarrant County, Texas in August, 1962, that it was deemed advisable to appoint a guardian ad litem to represent her interests as a beneficiary under the 1960 instrument. One of the attorneys for Mrs. Herbert testified that he had learned during his investigation a serious issue could be made as to Mrs. Tillar's testamentary capacity. The will the bank and the charities were seeking to probate was executed only sixteen months prior to the one Mrs. Herbert was urging. Mrs. Tillar was 87 years old and in feeble health then, so the proponents of that will had some problems, too.

Settlement negotiations conducted during the month of July, 1962, reached the point where it was indicated that Mrs. Herbert could receive all of the bequests made to her in the March 9, 1960, instrument, plus $675,000.00, and certain other smaller benefits, if she would agree that the probate of the 1961 instrument offer-

ed by her be denied, and of the 1960 instrument be granted. She travelled from California to Texas to meet with her lawyers to discuss the settlement. She agreed to the settlement, and submitted a written instrument, styled, "Statement and Proposal of Settlement", dated July 26, 1962, setting out the terms along the lines indicated above. In connection with the $675,000.00 cash to be paid her by the Tillar estate, the statement and proposal provided that $550,000.00 of it should be paid to her as "her sole and separate property" and the balance of $125,000.00 would be paid her as reimbursement for attorney's fees incurred by her lawyers in their efforts to probate the 1961 instrument. All consents necessary to make the proposal a settlement contract were obtained by July 30th.

One of the matters taken up between Mrs. Herbert and her attorneys at the time she discussed the settlement negotiations with them in the latter part of July was the amount of their fee. The proposal for settlement contemplated that she and her mother would receive the bequests to them under the March 9, 1960 instrument in spite of a provision in Article XII thereof for forfeiture of the benefits of any legatee who sought to defeat that instrument. The $1,000.00 a month annuity to Mrs. Herbert for life had to be evaluated before the contingent fee formula in the contract with her attorneys could be applied. Mrs. Herbert and her attorneys agreed upon a value of $252,000.00 for her bequests under the March 9, 1960 instrument; and an attorney's fee of $135,500.00 was then reckoned under the contract in the following fashion: The $252,000.00 above mentioned was added to the $675,000.00 cash Mrs. Herbert was to receive, giving a total recovery of $927,000.00. The $385,000.00 the contract with the attorneys provided she was to receive free of any fee was subtracted from the amount of the total recovery, leaving a remainder of $542,000.00. Twenty-five per cent of that amount was $135,500.00. Mrs. Herbert and her attorneys allocated $125,-000.00 to their efforts to get the 1961

instrument probated, and $10,500.00 to the balance of the services. No representative of the estate was present or had any voice in these matters relating to the amount of the attorney's fee.

There is nothing in the record to indicate that Mrs. Herbert remained in Texas long after the settlement had been agreed upon. Acknowledgments on some of the instruments executed by her during the next two weeks show that she had returned to California. On August 6th, her attorneys delivered a letter signed by her to the persons named as executors in the 1960 instrument directing that checks in payment of the $675,000.-00 cash under the settlement be made out as follows: a check for $539,500.00 payable to her alone, a check for $125,000.00 payable to three of her Texas attorneys jointly, and a check for $10,500.00 payable jointly to her and those three attorneys. The letter further instructed that all the checks be delivered directly to her attorneys.

The attorneys for the respective parties met in the office of the County Judge of Tarrant County, Texas during the noon hour on August 13th, and informed him of the settlement and of the fact that they were ready to proceed with the appropriate probate actions. They went directly to the courtroom, where the County Court of Tarrant County, Texas, Sitting in Probate, entered an order in Cause No. 31957, denying probate of the instrument dated July 7, 1961. Thereupon, the Court, after receipt of the proper proof in Cause No. 31993, entered an order admitting to probate as the last will and testament of Genevieve E. Tillar, deceased, the instrument dated March 9, 1960. The matter of fee for Mrs. Herbert's attorneys was not discussed during any of the proceedings on August 13th.

Counsel for Mrs. Herbert went to the offices of the attorneys for the Tillar estate on the morning of August 15th to consummate the settlement. The remaining instruments necessary to effectuate the compromise were signed and delivered. Checks drawn in accordance with the terms of Mrs. Herbert's letter

of August 6th were given to her attorneys. One of the instruments left with the attorneys for the estate was styled, "Application for Allowance of Expense and Attorney's Fee", and was signed by the two Fort Worth lawyers for Mrs. Herbert. The application recited the employment of the attorneys, and prayed for "an order directing the independent executors of the Estate of Genevieve Eagon Tillar, Deceased, to pay to her or her order the sum of $125,000 as partial reimbursement of the attorneys fees and expenses incurred by her in good faith and with just cause in offering for probate the instrument dated July 7, 1961, in which she was named as executrix."

The application was presented to the County Judge later that day, together with a proposed order prepared in advance granting the application and directing the payment of $125,000.00 to Mrs. Herbert or her order "as reimbursement to her for her necessary expenses and disbursements in offering for probate, in good faith and with just cause, said instrument of July 7, 1961." It further stated that the $125,000.00 was to be paid "pursuant to and as a part of the Settlement Agreement dated July 26, 1962, and not in addition thereto", and that it was "to be charged as an expense of the administration." The only blanks for the judge to fill in were one for the day of the month in the first line and the one for signature at the end. The order was signed and entered ex parte without hearing any evidence. The only support for it was the unsworn application signed by Mrs. Herbert's attorneys. The only basis set out in the application for allowance of the fee was that Mrs. Herbert had "contracted to pay attorneys fees for services rendered in offering said instrument for probate more than

the sum of $125,000.00 and has, in addition thereto, incurred travelling and other expenses." There was nothing in the application that gave any idea of the services rendered.

■ The government argues that the estate is not entitled to a deduction for any part of the fee for Mrs. Herbert's attorneys because she did not prosecute her probate proceedings in good faith and with just cause, as is required by Section 243 of the Probate Code. In answer to plaintiff's interrogatory 10, it said that it did not dispute that her action was originally filed in good faith. There is no merit in its contention that the settlement was an abandonment of such good faith and just cause. The language, "whether successful or not", in Section 243 answers this contention of the government. The law does not require that the effort to probate or defend a proposed will be successful. Huff v. Huff, 132 Tex. 540, 124 S.W.2d 327 (1939). The effort by her to probate the 1961 instrument was in good faith and with just cause within the meaning of the statute, and the estate was entitled to deduct an amount within the limits it paid out representing the reasonable cash value of their services in attempting to probate the instrument in question.

■ The Court cannot agree with the plaintiffs' claim that the order of August 15th mentioned above is conclusive on the issue of the amount. The general rule governing the acceptability of a decision of a local court on matters pertaining to claims against an estate over which it has jurisdiction is set out in Sec. 20.2053–1(b) (2), Treasury Regulations.[1] That regulation says that such a decision "will *ordinarily* be accepted" provided the court "passes upon the facts

---

1. Sec. 20.2053–1(b) (2), Treasury Regulations, provides:

   "The decision of a local court as to the amount and allowability under local law of a claim or administration expense will *ordinarily* be accepted if the court passes upon the facts upon which deductibility depends. * * * If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant." (Emphasis added).

upon which deductibility depends." Provision is also made, with certain safeguards, for a decree based upon consent, "accepted by the court as *satisfactory evidence upon the merits.*" The concluding sentence says: * * * It will be presumed that consent was of this character, and was so accepted, *if given by all parties having an interest adverse to claimant.*" (All emphasis in quotations is added). The Court construes this regulation to mean that:

(1) The acceptance of the court decree by the tax authorities is not obligatory in all cases. The word "ordinarily" would have no meaning otherwise. The purpose of it is to permit the authority reviewing the tax deductibility of an allowed claim an opportunity in a proper case to take a look at the transaction as a whole to determine if there existed the protection as to the validity and amount of a claim which ordinarily follows from a decree based on evidence on the merits or on consent of parties having adverse interests in the matter.

(2) One of the prerequisites to the acceptance of a consent decree is that there be some adversity of interest among the parties involved in the subject matter of the decree.

The claim sought to be deducted has its roots in Sec. 243 of the Texas Probate Code; and the decisions under that statute show the same skepticism as the regulation in regard to the acceptance carte blanche of an attorney's fee established only by consent of the personal representatives of the estate. The Texas Supreme Court, in the recent case of Salmon v. Salmon, 395 S.W.2d 29, 32 (1965), in discussing that question, said, "the amount is determined by the reasonable value of the services rendered for the benefit of the estate and not by any agreement on the part of the personal representative."

The regulation in question only spells out what has been said all along by the federal courts as to the *conclusiveness* of a state court's decision in subsequent federal tax matters. Estate of Farish v. United States, D.C.S.D.Tex., 233 F.Supp. 220, 227 (1964), affirmed, 5 Cir., 360 F. 2d 595 (1966), and cases cited therein; Colowick, The Binding Effect of a State Court Decision in a Subsequent Federal Income Tax Case, 12 Tax Law Rev. 213 (1957).

█ None of the safeguards contemplated by the regulation or by the court decisions was present in this case. No evidence was offered from which the probate court could determine any facts. He never made any real decision as to the reasonableness of the fee. If consent *could be implied* from the manner in which the matter was presented to him— as much from what was not said as from what was said—the adverse interests required by the regulation to support the consent were lacking. The order was entered ex parte. The amount of the fee was fixed by Mrs. Herbert and her attorneys in a conference where no representatives of the estate were present. It was calculated under a contingent fee formula set out in a contract between her and her attorneys. She was bound to pay them that contingent fee, and had no right to argue about the reasonableness of a cash fee certain. After the contingent fee was computed to be $135,-500.00, she and her attorneys agreed to allocate $125,000.00 of that amount to their efforts to get the 1961 instrument probated, and $10,500.00 to their services to her personally. She was going to pay $135,500.00 regardless of what the probate court did, so she had no interest in trying to hold down the amount of the fee allocated to the estate. The representatives of the estate took no part in the fixing of the fee or the amount of it to be allocated to the estate. They had no voice in those matters. Mrs. Herbert and the executors knew that she was to receive $675,000.00 regardless of the amount of the fee allowed by the probate court. The fact that the settlement was consummated and all of the checks due thereunder were delivered and the attorneys were paid, before the application for the allowance of the attorney's fee in question was even filed, leaves no doubt about that fact. The representatives of

the estate also had no interest in holding down the amount of the allocation of attorney's fee to the estate. It was to their interest taxwise that it be as large as possible. The situation presented, then, was one where there was no incentive on the part of any of the participants to keep the allocation low. One of the parties wanted it to be high and the other one did not care. There were no adverse interests in regard to the amount of the fee to be allocated to the estate. The result was that there was presented to the probate court an application for allowance of a $125,000.00 fee arrived at on the basis of, or at least influenced by, a contingent fee formula fixed by parties owing no responsibility to the administration of the estate under the will admitted to probate. It is true that the $125,000.00 lacked a few dollars, comparatively, of being the full amount of the contingent fee of $135,500.00; but it would be difficult for a distinterested person to feel that the contractual contingent fee formula did not have a substantial influence in the determination of that amount. The lack of a greater variation between the admittedly contingent fee of $135,500.00 and the $125,000.00 is a strong circumstance showing that the determination of the $125,000.00 was influenced by the contingent fee formula. There is in most cases a wide difference between a reasonable case fee certain and a contingent fee. Salmon v. Salmon, supra, condemned a fee under Sec. 243 where it appeared that the amount of the fee might to have been tainted to some extent by a contingent fee contract.

The order in question here presents a situation somewhat analogous to that in Saulsbury v. United States, 5 Cir., 199 F.2d 578, 580 (1952), where it was held that a decision of a state court represented by an order signed by a judge who in truth actually made no decision was not binding in a subsequent federal tax proceeding. The Court there said:

The order of the state court directing that no further payments of income be made to appellant until said loan was paid, we think, is not entitled to any weight, since it did not determine the rights of the parties under the trust instrument. Moreover, it does not affirmatively appear that said order was obtained in an adversary proceeding * * * all interested parties agreed to the order and * * * it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income, and no *bona fide* controversy between the trustee and the beneficiary as to property rights under the trust instrument * * *."

In Stallworth's Estate v. Commissioner of Internal Revenue, 5 Cir., 260 F.2d 760, 763 (1958), the Court, in holding that a judgment of an Alabama state court was not binding under the circumstances in a federal tax proceeding said:

" * * * If the Alabama suit was nonadversary in character it is not binding. Freuler v. Helvering, 291 U. S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 * * *."

The following is quoted from Faulkerson's Estate v. United States, 7 Cir., 301 F.2d 231 (1962), where a decree of an Indiana state court was held not to be binding in a federal estate tax proceeding:

"The decree of the Steuben Circuit Court was rendered in an *ex parte*, non-adversary proceeding, without a hearing on the merits. It reached a result contrary to Indiana law and Treasury Regulations * * *." (p. 232).

While the order allowing the $125,000.00 fee is not binding in this tax matter, the Court is of the opinion that the estate was entitled to a deduction for an amount representing a reasonable cash fee certain for the services rendered in the proceeding to get the 1961 instrument admitted to probate. The Supreme Court of Texas, in Salmon v. Salmon, supra, laid down the guide for determin-

ing the amount of an attorney's fee to be allowed under Sec. 243. It there said, 395 S.W.2d, at pp. 31, 32:

"* * * In these circumstances and 'whether successful or not' he may be allowed 'reasonable attorney's fees.' This means a *reasonable fee certain* for the services rendered, and the statute does not authorize the allowance of an amount that might be reasonable for a fee contingent upon successful prosecution of the litigation * * *."

"* * * The amount which Raymond Salmon, who was principal beneficiary of the will, might be willing to pay as a contingent fee could be of little assistance to the trier of fact in fixing a reasonable fee certain for prosecuting the former action. As pointed out in Rowe v. Dyess, Tex.Com. App., 213 S.W. 234, the amount is determined by the reasonable value of the services rendered for the benefit of the estate and not by any agreement on the part of the personal representative * * *." (Emphasis added).

■ Opinion testimony of expert witnesses, even though undisputed, is not ordinarily binding on the trier of facts. Morris v. United States, D.C.N.D.Tex. 217 F.Supp. 220 (1963); Mims v. United States, 5 Cir., 375 F.2d 135 (1967). That the rule goes even further in a case where the opinion evidence is in relation to the reasonable amount of attorney's fees is shown by the following language in Campbell v. Green, 5 Cir., 112 F.2d 143, 144 (1940): "* * * The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value. 7 C.J.S., Attorney and Client, § 191d * * *."

■ The Court is of the opinion that a reasonable fee certain for Mrs. Herbert's attorneys in their efforts to have the 1961 instrument probated as the last will and testament of Mrs. Tillar was $50,000.00, and that the estate was there-

fore entitled to deduct that amount from its gross value. The refund due herein will be computed accordingly. Judgment will be rendered for the plaintiff for the amount so computed.

The Court has no intention to cast any reflection upon any of the attorneys or executors by anything said in this opinion. The Court has absolute confidence in the integrity of all of them and in the credibility of the attorneys who testified. All of them represented their clients well. They made a good settlement in the best interest of all parties. They acted in good faith throughout. The government admits that the full amount of the total fee paid the attorneys for Mrs. Herbert was reasonable as a contingent fee. The Court would find that in the absence of such admission. There is no question about the fact that the lawyers earned it. The amount of a reasonable cash fee certain is a matter of opinion. Difference of opinion among courts and lawyers, and among lawyers themselves, is part of the everyday life in matters of litigation.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.